COOLEY LLP
MICHELLE C. DOOLIN (179445)
(doolinmc@cooley.com)
DARCIE A. TILLY (239715)
(dtilly@cooley.com)
HEATHER M. SPEERS (305380)
(hspeers@cooley.com)
4401 Eastgate Mall
San Diego, CA  92121
Telephone:   (858) 550-6000
Facsimile:    (858) 550-6420

Attorneys for Defendants
SYNAPSE GROUP, INC.;
SYNAPSECONNECT, INC.;
and TIME INC.

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON DALE PRICE and CHERYL EDGEMON, individually and on behalf of all others similarly situated,<br><br>               Plaintiffs,<br><br>     v.<br><br>SYNAPSE GROUP, INC., a Delaware corporation; SYNAPSECONNECT, INC., a Delaware corporation; TIME INC., a Delaware corporation; and DOES 1–50, inclusive,<br><br>               Defendants. | Case No. 3:16-cv-01524-BAS-BLM<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Date:        September 26, 2016<br>Judge:     Hon. Cynthia Bashant<br>Courtroom:  4B |

# Table of Contents

**Page**

I.      INTRODUCTION .................................................................................. 1

II.     BACKGROUND AND PROCEDURAL HISTORY .................................... 2

    A.      California's Automatic Renewal Law ........................................ 2

    B.      The Parties ................................................................................. 3

    C.      Procedural Posture ..................................................................... 3

    D.      Summary of the First Amended Complaint's Allegations .................. 3

    E.      Class Definition and Relief Sought ............................................ 6

III.    LEGAL STANDARDS .......................................................................... 6

    A.      Standard on a Motion to Dismiss .............................................. 6

    B.      Elements of Plaintiffs' Causes of Action .................................. 7

IV.     THE COMPLAINT SHOULD BE DISMISSED .......................................... 9

    A.      Plaintiffs' Statutory-Based Claims (Counts 1, 2, & 4) Fail
        Because Plaintiffs Do Not Adequately Plead Standing ...................... 9

        1.      Plaintiffs Have Not Pled Independent Facts of Injury ............. 10

        2.      Plaintiffs Have Not Pled Any Facts Showing Reliance .......... 12

    B.      Plaintiffs Have Not Alleged Sufficient Facts of a Purported
        Violation of the ARL, Meaning All of Their Causes of Action
        Fail ............................................................................................. 13

        1.      The Allegations Do Not Plead a Violation of the ARL ........... 13

            a.      Plaintiff Edgemon Failed to Plead Facts Regarding
                Defendants' Purportedly Faulty Disclosures ................. 13

            b.      Plaintiffs Failed to Allege Facts Supporting Their
                Assertion that the Automatic Renewal Offer Terms
                Were Not Clearly and Conspicuously Disclosed .......... 14

            c.      Plaintiffs Failed to Plead Facts Supporting Their
                Claim that They Did Not Receive the Required
                Acknowledgement ......................................................... 15

            d.      Plaintiffs' Alternative Theory Regarding a
                Purported Material Change Also Fails ........................... 16

            e.      Plaintiffs Failed to Plead Absence of Good Faith .......... 17

        2.      Plaintiffs' Derivative Claims Are Insufficiently Pled In
            Light of Their Failure to Plead an ARL Violation ................. 17

    C.      Plaintiffs' CLRA, Conversion, and Unjust Enrichment Claims
        (Counts 2, 4, & 5) Must Be Dismissed for Independent Reasons ...... 19

        1.      Plaintiffs Fail to Plead a Violation of the CLRA (Count 2) ..... 19

            a.      Subpart (a)(5): No Facts About Sponsorship, etc .......... 19

            b.      Subpart (a)(9): No Facts About Bait-and-Switch .......... 20

            c.      Subpart (a)(13): No Facts About Price Reductions ....... 20

**Table of Contents**

(continued)

Page

        d.      Subpart (a)(17): No Facts About Contingencies ............ 20

    2.     Plaintiffs Fail to Plead Conversion (Count 3) .......................... 21

    3.     Unjust Enrichment (Count 5) Cannot Survive Alone .............. 22

D.    Time Is an Improper Party and Should Be Dismissed ....................... 22

    1.     Plaintiffs Do Not Plead That Synapse Is an Agent of Time ..... 23

    2.     Plaintiffs Do Not Plead Time Is the Alter-Ego of Synapse ...... 24

E.    Plaintiffs Do Not Have Standing for Injunctive Relief ..................... 25

V.    CONCLUSION ............................................................................. 25

# Table of Authorities

Page(s)

## Cases

*Am. Oil Serv. v. Hope Oil Co.*,
194 Cal. App. 2d 581 (1961) ................................................................ 15

*Amirhamzeh v. Chase Bank USA, N.A.*,
2014 WL 641705 (C.D. Cal. Feb. 7, 2014) ........................................... 12

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ...................................................................... 2, 7

*Baxter v. Intelius, Inc.*,
2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) ................................ 13, 18

*Bell Atl. v. Twombly*,
550 U.S. 544 (2007) ............................................................................ 7

*Berry v. Webloyalty.com, Inc.*,
No. 2011 WL 1375665 (S.D. Cal. Apr. 11, 2011), *vacated and
remanded*, 517 F. App'x 581 (9th Cir. 2013) ..................................... 18

*Boorstein v. CBS Interactive, Inc.*,
222 Cal. App. 4th 456 (2013) ....................................................... 10, 11

*Boorstein v. Men's J. LLC*,
2012 WL 2152815 (C.D. Cal. June 14, 2012) ....................................... 2

*Branca v. Nordstrom, Inc.*,
2015 WL 1841231 (S.D. Cal. Mar. 20, 2015) ...................................... 8

*Cafferty Clobes Meriwether & Sprengel, LLP v. XO Commc'ns Servs.,
Inc.*,
2016 U.S. Dist. LEXIS 72692 (N.D. Ill. June 3, 2016) ....................... 13

*Californians for Disability Rts. v. Mervyn's, LLC*,
39 Cal. 4th 223 (2006) ..................................................................... 10

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20 Cal. 4th 163 (1999) ...................................................................... 8

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
631 F.3d 939 (9th Cir. 2011) ............................................................ 25

*Durell v. Sharp Healthcare*,
183 Cal. App. 4th 1350 (2010) ...................................................... 9, 10

*e360 Insight, LLC v. Comcast Corp.*,
546 F. Supp. 2d 605 (N.D. Ill. 2008) ................................................. 17

*Ebner v. Fresh, Inc.*,
818 F.3d 799 (9th Cir. 2016) ............................................................ 22

COOLEY LLP
ATTORNYS AT LAW
SAN DIEGO

iii

MEMO IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:16-CV-01524-BAS-BLM

**Table of Authorities**

(continued)

Page(s)

*Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
    753 F.3d 862 (9th Cir. 2014) ..................................................................25

*Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*,
    224 F.R.D. 661 (W.D. Wash. 2004) ...............................................23, 24

*Fraker v. Bayer Corp.*,
    2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ..........................................19

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
    2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .......................................22

*Hager v. Vertrue, Inc.*,
    2011 WL 4501046 (D. Mass. Sept. 28, 2011)...................................13, 19

*Hernandez v. Atl. Fin. Co.*,
    105 Cal. App. 3d 65 (1980) ......................................................................9

*Holomaxx v. Microsoft Corp.*,
    783 F. Supp. 2d 1097 (N.D. Cal. 2011).................................................17

*Hook v. Intelius, Inc.*,
    2011 WL 1196305 (M.D. Ga. Mar. 28, 2011) .......................................18

*Hovsepian v. Apple, Inc.*,
    2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) .......................................22

*Jogani v. Super Ct.*,
    165 Cal. App. 4th 901 (2008)..................................................................22

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ..................................................................7

*Kelly v. BP W. Coast Prods. LLC*,
    2014 WL 7409220 (E.D. Cal. Dec. 30, 2014) .......................................20

*Kobzoff v. L.A. Cty. Harbor/UCLA Med. Ctr.*,
    19 Cal. 4th 851 (1998) ............................................................................15

*Kramer v. Intuit Inc.*,
    121 Cal. App. 4th 574 (2004), *as modified on denial of reh'g* (Aug.
    11, 2004).................................................................................................20

*Kwikset Corp. v. Super. Ct.*,
    51 Cal. 4th 310 (2011)........................................................................8, 10

*Lavie v. Procter & Gamble Co.*,
    105 Cal. App. 4th 496 (2003)....................................................................8

*M/V Am. Queen v. San Diego Marine Const. Corp.*,
    708 F.2d 1483 (9th Cir. 1983) ................................................................24

**Table of Authorities**
(continued)

Page(s)

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
   89 Cal. App. 4th 1042 (2001)................................................................. 15

*McBride v. Boughton*,
   123 Cal. App. 4th 379 (2004).................................................................22

*McMillan v. Lowe's Home Ctrs., LLC*,
   2016 WL 2346941 (E.D. Cal. May 4, 2016).........................................12

*Meyer v. Sprint Spectrum L.P.*,
   45 Cal. 4th 634 (2009)............................................................................10

*Mindlab Media, LLC v. LWRC Int'Z LLC*,
   2012 WL 386695 (C.D. Cal. Feb. 6, 2012)...........................................25

*Navarro v. Block*,
   250 F.3d 729 (9th Cir. 2001) ...................................................................7

*Oakdale Vill. Grp. v. Fong*,
   43 Cal. App. 4th 539 (1996), *as modified on denial of reh'g* (Apr.
   10, 1996)..................................................................................................21

*Otto v. Abbott Labs., Inc.*,
   2013 U.S. Dist. LEXIS 53287 (C.D. Cal. Mar. 15, 2013) ...................18

*Pac. Can Co. v. Hewes*,
   95 F.2d 42 (9th Cir. 1938).......................................................................23

*Pauley Petroleum, Inc. v. Cont'l Oil Co.*,
   231 A.2d 450 (1967), *aff'd*, 239 A.2d 629 (1968) ..............................22

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil &
   Shapiro, LLP*,
   150 Cal. App. 4th 384 (2007)..................................................................21

*Pratt v. Whole Foods Mkt. Cal., Inc.*,
   2014 WL 1324288 (N.D. Cal. Mar. 31, 2014) ......................................12

*S. Pac. Trans. Co. v. St. Bd. of Equalization*,
   175 Cal. App. 3d 438 (1985)...................................................................15

*Sanders v. Apple Inc.*,
   672 F. Supp. 2d 978 (N.D. Cal. 2009).....................................................9

*Sandoval v. Pharmacare US, Inc.*,
   2016 WL 3554919 (S.D. Cal. June 10, 2016)..........................................6

*Simonyan v. Ally Fin., Inc.*,
   2013 WL 45453 (C.D. Cal. Jan. 3, 2013)...............................................14

**Table of Authorities**
(continued)

Page(s)

*Soriano v. Countrywide Home Loans, Inc.*,
  2011 WL 1362077 (N.D. Cal. Apr. 11, 2011) ....................................... 22, 23, 24

*Sperling v. DSW Inc.*,
  2016 WL 354319 (C.D. Cal. Jan. 28, 2016) ............................................. 8

*Spokeo, Inc. v. Robins*,
  136 S. Ct. 1540 (2016), *as revised* (May 24, 2016) ............................. 10

*Stiles v. Wells Fargo Bank*,
  2014 WL 7146950 (N.D. Cal. Dec. 15, 2014) ...................................... 18

*In re Tobacco II Cases*,
  46 Cal. 4th 298 (2009) ................................................................. 8, 12

*In re Vistaprint Corp. Mktg. & Sales Prac. Litig.*,
  2009 WL 2884727 (S.D. Tex. Aug. 31, 2009), *aff'd sub nom. Bott
  v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010) ................ 18

*Von Brimer v. Whirlpool Corp.*,
  362 F. Supp. 1182 (N.D. Cal. 1973), *aff'd in part, rev'd in part*, 536
  F.2d 838 (9th Cir. 1976) ............................................................... 24

*Williamson v. Reinalt-Thomas Corp.*,
  2012 WL 1438812 (N.D. Cal. Apr. 25, 2012) ................................ 9, 21

**Statutes**

Cal. Bus. & Prof. Code
  § 17200 ,Cal. Unfair Competition Law ...................................... *passim*
  § 17204 ........................................................................ 8, 10
  § 17500, Cal. False Advertising Law ....................................... *passim*
  § 17535 ........................................................................ 8, 10
  § 17600, Automatic Renewal Law ............................................ *passim*
  § 17601 ....................................................................... *passim*
  § 17602 ....................................................................... *passim*
  § 17604 ....................................................................... 3, 17

Cal. Civ. Code
  § 1750, Cal. Consumer Legal Remedies Act ................................ *passim*
  § 1770 ......................................................................... *passim*
  § 1780 ......................................................................... 9, 10

**Table of Authorities**
(continued)

**Page(s)**

**Other Authorities**

Fed. R. Civ. P.

8 .................................................................................................................... 7
9(b) ................................................................................................................. 7
12(b)(6) .................................................................................................... 6, 7

Random House Webster's Unabridged Dictionary (2d ed. 2001) ........................... 15

U.S. Const. Art. III ...................................................................................... 2

COOLEY LLP
ATTORNYS AT LAW
SAN DIEGO

vii

MEMO IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:16-CV-01524-BAS-BLM

## I.   INTRODUCTION.

Synapse Group, Inc. is a 25 year old (Better Business Bureau A+ rated) marketing company for magazine subscription sales.  It is the leading magazine marketer in the United States, representing major publishers, including its parent company, Time Inc. ("Time").  SynapseConnect, Inc., (collectively with Synapse Group, Inc., "Synapse", and with Time, "Defendants") provides magazine subscription offers to consumers.

Plaintiffs Shannon Dale Price and Cheryl Edgemon ("Plaintiffs") claim they obtained magazine subscriptions from Defendants that continued year-to-year after responding to an online promotion.  When obtaining the subscriptions Plaintiffs were provided prominent and easy to understand disclosures informing them that (1) their subscription will continue until cancelled, (2) their account will be charged automatically for successive terms; and (3) the applicable cancellation policy.  These disclosures were on a page where they were the only body text and under a heading titled "Important."  Plaintiffs clicked a "Complete" button immediately underneath these terms to assent to them.  Plaintiffs were also sent a notice in the mail before they incurred any charges for the second term of their subscriptions.

Despite these fulsome and prominent disclosures, Plaintiffs nevertheless claim they were not adequately informed of the renewal terms for their subscriptions in purported violation of a California statute governing continuous service contracts: the Automatic Renewal Law, Cal. Bus. & Prof. Code Section 17600 ("ARL").  The purported ARL violation serves as a predicate for Plaintiffs claims under California's Unfair Competition Law, Business and Professions Code section 17200 ("UCL"), California's False Advertising Law, Business and Professions Code section 17500 ("FAL"), and California Consumer Legal Remedies Act, Civil Code section 1750 ("CLRA"), as well as for conversion and unjust enrichment.  None of Plaintiffs claims, however, can survive.  As discussed below, Plaintiffs' First Amended Class Action Complaint ("FAC" or "complaint")

suffers from a myriad of pleading deficiencies warranting its dismissal.

First, Plaintiffs lack standing to bring their claims under the FAL, CLRA and UCL. Each of these claims requires a plaintiff to plead facts establishing injury and reliance in order to have standing to bring a private action. Plaintiffs failed to do so. Plaintiffs' purported injuries are merely the claimed violation of the FAL, CLRA and UCL. This is improper. *Boorstein v. Men's J. LLC,* 2012 WL 2152815, at *3 (C.D. Cal. June 14, 2012) (where a statute requires a plaintiff to plead an injury alleging "a violation of the statute, without more, is insufficient" to state a claim). Further, the complaint is bereft of any allegations related to reliance.

Second, the complaint fails to include facts supporting Plaintiffs' assertion that Defendants violated the ARL. Plaintiffs merely parrot the ARL and then leap to the conclusion Defendants violated it. This is insufficient under *Iqbal* and unsupportable in light of the disclosures provided.

Third, Plaintiffs claims for conversion and unjust enrichment are premised on invalid legal theories and cannot survive independent of the other claims.

Fourth, the complaint improperly names Time as a defendant, despite the absence of any allegations concerning Time's conduct. As a separate legal entity, Time is not liable for the acts of its subsidiaries without a showing of exceptional circumstances. Plaintiffs fail to plead any facts establishing such a showing.

Fifth, Plaintiffs lack Article III standing to assert claims for injunctive relief. They have not shown a risk of future harm, and thus, to the extent a cause of action seeks injunctive relief, it is improper.

Accordingly, Plaintiffs' complaint should be dismissed with prejudice.

## II. BACKGROUND AND PROCEDURAL HISTORY.

### A. California's Automatic Renewal Law.

Enacted in 2010, the ARL regulates the language companies may use to obtain affirmative consent to automatically renewing or continuous service contracts, Cal. Bus. & Prof. Code §§ 17601(b), 17602(a), the formatting of such

language, *id.* §§ 17601(c), 17602(a)(1), the acknowledgement of purchase that is to be provided to purchasers, *id.* § 17602(a)(3), and how notice of material changes to contract terms should be made, *id.* § 17602(c).  The ARL provides that a violation of its terms is not a crime, and that it is enforceable via other statutes.  *Id.* § 17604. It further contains a clause stating that "[i]f a business complies with the provisions of this article in good faith, it shall not be subject to civil remedies."  *Id.*

### B.    The Parties.

Plaintiffs allege they are San Diego residents who obtained magazine subscriptions from Defendants.  (FAC ¶¶ 1, 9, 15.)  Plaintiffs allege that Synapse is involved in the business of marketing magazine subscriptions, including the magazine subscriptions at-issue in the complaint.  (*Id.*, ¶¶ 2–3.)  Although Plaintiffs allege no facts regarding conduct by Time, they seek to pull it into this dispute based on allegations that it is the parent corporation of Synapse.  (*Id.*, ¶¶ 4–5.)

### C.    Procedural Posture.

On May 17, 2016, Plaintiffs filed a complaint in San Diego Superior Court. On June 17, 2016, Defendants removed the action to this Court.  (ROA No. 1.)  On July 12, 2016, Plaintiffs filed a motion for leave to file a first amended complaint, which was granted on July 18, 2016.  (ROA Nos. 9–10.)

### D.    Summary of the First Amended Complaint's Allegations.

At issue in the complaint is an allegedly deceptive scheme purportedly run by Defendants whereby consumers are provided the "opportunity to obtain magazines either free or at a discounted price for a specific term" but then "defendants actually enroll consumers in a program that automatically renews the subscriptions from year-to-year and results in annual charges to the consumer's" payment devices without appropriate authorization.  (FAC ¶ 8.)

With respect to plaintiff Price, the complaint alleges that following an online purchase, Price was directed to an online survey hosted by bizrate.com.  (*Id.*, ¶ 9, Ex. 1.)  After completing the survey, Price claims he was given the option to select

up to five magazines and receive a full year of issues for $2.00 per magazine selection ("magazine selection page"). (*Id.*, ¶ 9, Ex. 1.)

On the magazine selection page, above the "Continue" button that Price acknowledges he must have clicked to get to the payment page, was the following disclosure: "All selections come with automatic renewal features. Click 'Continue' for full details." (*Id.*, ¶11, Ex. 1.) After clicking "Continue," Price was directed to a page to enter his delivery information ("delivery page"). (*Id.*, ¶12, Ex. 1.) After clicking "Continue" again, Price was directed to a page confirming the delivery information, and seeking payment information ("payment page"). (*Id.*, ¶13, Ex. 1.)

Price further acknowledges the payment page contained numerous disclosures, as shown by this excerpt from Exhibit 1 to the complaint:



As shown above, the payment page informed Price that the $2.00 fee covered the subscription for the first year only. (*Id.*, Ex. 1.) Also on that page, immediately

above the "Complete" button, there was a section labeled "Important Reward Details."   The first words of this paragraph are in bold and state "Automatic Renewal Authorization."   This paragraph disclosed that (a) the magazines would automatically renew after the first term and continue yearly, (b) the customer would receive a notice prior to renewal specifying the price and billing terms, (c) the account used to pay for the first term of issues would be charged for successive terms unless the customer canceled, and (d) the toll-free number for cancellation. (*Id.*)  Price's consent to the disclosures was requested via the "Complete" button.

Despite the fact Price acknowledges that all of these robust disclosures were made to him, he nevertheless claims the disclosures were insufficient to comply with the ARL because they were purportedly too "small" and were not presented in a manner that was capable of being retained by him.  Yet, there are no facts in the complaint to support such assertions.  For instance, there are no allegations in the complaint that the large underlined heading of "Important Reward Details" and subsequent bold line of "Automatic Renewal Authorization" would not clearly call attention to a reasonable consumer to the renewal disclosures that followed—*which were also emphasized by the fact that they were on their own and isolated away from any body text.*  Nor are there allegations in the complaint that a reasonable consumer would be incapable of following the instructions on the payment page and print a copy of the disclosures for his or her records.

Moreover, Price cannot avoid the fact—despite omitting such details from the complaint—that he received notice prior to renewal specifying the price for the next billing term and how to cancel the subscription without incurring that charge. (Declaration of E. Peacock ("EP Decl."), Ex. A ("[T]he magazine(s) listed below will continue for the next term of issues using the account number you agreed to be billed for your selection(s) and will be charged annually for Maxim at $37 for a total of 10 issues….  If you wish to discontinue, call 877-340-6783 by Feb 12 and no charge will appear."); *id.*, Ex. B (same disclosure, but listing prices and renewal

dates for Price's other magazine subscriptions).)

Recognizing that the complaint lacks sufficient facts to assert a violation of the ARL related to the pre-purchase disclosures and acknowledgment, Price asserts an alternative theory that Defendants failed to provide him appropriate notice of a material change to his agreement.  Yet, the complaint is silent as to what that material change was.  As noted, Price acknowledges that he was informed before starting his subscription that he would receive a notice prior to renewal that would specify the price for the next term and billing terms.  The complaint fails to allege that he did not receive such notice.  Nor could it do so.  Although Price ignores this fact in his complaint, Price was provided such notice before any renewal of his subscriptions.  (EP Decl., Ex. A-B.)

Without providing any factual basis for her claim, plaintiff Edgemon asserts claims identical to Price based on an unsupported assertion that the disclosures she was presented when acquiring her subscriptions were similar to the disclosures Price received.  (FAC ¶15, Ex. 1.)  Like with Price, Edgemon received notice of the upcoming subscription renewal before it occurred.  (EP Decl., Ex. C.)

## E.    Class Definition and Relief Sought.

Plaintiffs seek to represent a class consisting of "[a]ll individuals in California who, within the applicable statute of limitations . . . , were enrolled by defendants in an automatic renewal program or continuous service program."[1] (FAC ¶ 17.)  Plaintiffs seek the following relief: restitution, injunctive relief, attorneys' fees, compensatory damages, punitive damages, and costs of suit.

## III.   LEGAL STANDARDS.

### A.    Standard on a Motion to Dismiss.

Rule 12(b)(6) requires dismissal when a plaintiff has either failed to present a

---

[1] The class definition is wildly overbroad and, if Plaintiffs keep this class definition at the certification stage, uncertifiable.  *See Sandoval v. Pharmacare US, Inc.*, 2016 WL 3554919, at*7–8 (S.D. Cal. June 10, 2016) (denying certification in case where class definition includes consumers who have no cognizable injury, including those who obtained full refunds).

cognizable legal theory or to allege sufficient facts supporting a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While a court resolving a motion to dismiss under Rule 12(b)(6) must accept as true all factual allegations in the complaint, it need not accept "labels and conclusions" or "a formulaic recitation of the elements of a cause of action". *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

After accepting the well-pled allegations, a court determines whether a complaint alleges a "plausible" claim to relief. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quotation omitted).[2]

### B.   Elements of Plaintiffs' Causes of Action.

Plaintiffs allege five causes of action, all predicated on Defendants' purported violation of the ARL. (FAC ¶ 8 ("Defendants are engaged in an illegal 'automatic renewal' scheme for magazine subscriptions" because they allegedly failed to "provid[e] the requisite disclosures and . . . obtain[] the requisite authorizations required by California law."). The causes of action raise three statutory-based claims under the FAL, UCL, and CLRA, and two common law claims for conversion and unjust enrichment. The elements of each are as follows:

***False Advertising Law.*** As pled by Plaintiffs, their FAL claim is entirely premised on purported ARL violations. In addition to pleading a violation of the FAL, to withstand a motion to dismiss, a plaintiff must allege reliance on an alleged

---

[2] Paragraph 8 of the complaint confirms Plaintiffs' claims are subject to Rule 9(b) since the claims "sound in fraud." *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir. 2009). As discussed in the main text, however, the complaint fails to satisfy even the lower Rule 8 standard.

material misrepresentation and economic injury. Cal. Bus. & Prof. Code § 17535; *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326–27 (2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

**Unfair Competition Law.** The UCL includes three separate prongs relating to claims for "unfair competition"—(1) unlawful, (2) fraudulent, and (3) unfair business acts or practices. Cal. Bus. & Prof. Code § 17200.

To plead a violation of the "unlawful" prong of the UCL, a plaintiff must allege that the challenged practice violates another law. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Here, Plaintiffs appear to base their claim under the unlawful prong on California's ARL and the CLRA.

To plead a violation of the "fraudulent" prong of the UCL, a plaintiff must plead facts that the defendant made a material representation that would mislead an ordinary consumer acting reasonably under the circumstances. *See Branca v. Nordstrom, Inc*., 2015 WL 1841231, at *6 (S.D. Cal. Mar. 20, 2015); *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003). Although Plaintiffs purport to bring a claim under the "fraudulent" prong, (FAC ¶ 53), they make no allegations outside of those related to the purported ARL violations.

Where (as here) plaintiffs base their claim under the "unfair" prong on the same misrepresentations at issue in claims under the FAL and CLRA, the claim's validity rises and falls with the other claims. *See Sperling v. DSW Inc*., 2016 WL 354319, at *5 (C.D. Cal. Jan. 28, 2016).

In addition to pleading a violation of the UCL under at least one prong, to state a claim a plaintiff must allege reliance on the alleged misrepresentation and economic injury. Cal. Bus. & Prof. Code § 17204; *Kwikset,* 51 Cal. 4th at 326–27; *Tobacco II*, 46 Cal. 4th at 326.

**Consumers Legal Remedies Act.** The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale . . . of goods or services to

any consumer." Cal. Civ. Code § 1770(a). It permits a "consumer who suffers any damage as a result" of a CLRA violation to file suit. *Id.* § 1780(a).

**Conversion.** To state a claim for conversion, a plaintiff must allege "[1] ownership or right to possession of the property at the time of the conversion; [2] the defendant's conversion by a wrongful act or disposition of property rights; and [3] damages." *Williamson v. Reinalt-Thomas Corp.*, 2012 WL 1438812, at *4 (N.D. Cal. Apr. 25, 2012), (citation omitted). "[T]he general rule in California [is] that the object of a conversion claim cannot be money." *Id.* at *5. There are limited exceptions to this rule, which require, *inter alia*, a "special relationship between the parties…." *Id.* at *4.

**Unjust Enrichment.** In California there is not a standalone cause of action for "unjust enrichment." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010). Plaintiffs' claim for unjust enrichment is thus derivative of the other causes of action. *See Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) (noting that an "[unjust enrichment] claim will depend upon the viability of the Plaintiffs' other claims").

## IV. THE COMPLAINT SHOULD BE DISMISSED.

This Court should dismiss the complaint—with prejudice—because all of Plaintiffs' claims suffer from a lack of well-pled facts, are premised on untenable legal theories, and are otherwise not properly before this Court.

### A. Plaintiffs' Statutory-Based Claims (Counts 1, 2, & 4) Fail Because Plaintiffs Do Not Adequately Plead Standing.

This court need not look to the purported merits of Plaintiffs FAL, CLRA and UCL claims because Plaintiffs fail to allege facts establishing their standing to pursue these causes of action. *Hernandez v. Atl. Fin. Co.*, 105 Cal. App. 3d 65, 71 (1980) ("[S]tanding to sue is a threshold issue which must be resolved before this matter can be reached on its merits").

To have standing under the FAL, UCL, and CLRA, a plaintiff must plead

facts establishing injury in fact and, where (as here) the plaintiffs base their claims on allegedly misleading conduct, reliance.   Cal. Bus. & Prof. Code § 17535 (limiting private actions to "any person who has suffered injury in fact and has lost money or property as a result of a violation of [false advertising]); Cal. Bus. & Prof. Code § 17204 (limiting private actions to "a person who has suffered injury in fact and has lost money or property as a result of unfair competition); Cal. Civ. Code § 1780(a) (permitting a "consumer who suffers any damage as a result" of a CLRA violation to file suit); *Durell*, 183 Cal. App. 4th at 1367 (finding that plaintiff's CLRA claim failed because he did not allege he relied on any representation made by defendant); *Kwikset*, 51 Cal. 4th at 322; *Meyer v. Sprint Spectrum L.P.,* 45 Cal. 4th 634, 641–42 (2009).  Plaintiffs nevertheless fail to plead facts establishing they were harmed as a result of Defendants' purported violation of the ARL.

### 1.    Plaintiffs Have Not Pled Independent Facts of Injury.

Plaintiffs cannot use a purported statutory violation as their only basis for injury because it would improperly meld the violation and injury into one. *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 473–74 (2013) (dismissing plaintiff's UCL claim where plaintiff failed to allege injury apart from the purported violation of a statute, noting "the failure to provide [the statutorily-required] information inflicts merely a procedural injury," and does not satisfy the injury in fact requirement); *see Spokeo, Inc. v. Robins,* 136 S. Ct. 1540, 1546 (2016), *as revised* (May 24, 2016) (addressing Article III standing requirements for statutory violations).[3]   Thus, to establish standing, Plaintiffs must allege facts to show how Defendants' purported violations of the ARL caused Plaintiffs harm.

Plaintiffs claim their credit cards were "charged" "without [] authorization". (FAC ¶¶ 10, 15.)  But the only facts Plaintiffs offer to support Plaintiffs' conclusion

---

[3]  California Proposition 64, approved by voters on the November 2, 2004 General Election, incorporated the Article III injury in fact standing requirement to private actions under the UCL and FAL.  *See Californians for Disability Rts. v. Mervyn's, LLC*, 39 Cal. 4th 223, 227 (2006).

regarding "authorization" suggest the exact opposite. For example, Plaintiffs admit that the magazine selection page disclosed that "[a]ll selections come with automatic renewal features." (FAC ¶¶ 11, 13.) Likewise, Plaintiffs admit that Defendants disclosed the automatic renewal offer terms on the payment page, including the length of the term ("After the first term, all selections will continue"), the cancellation policy ("you authorize the account you provided to be charged . . . unless you choose to cancel: 1-800-429-2550"), and that the rate for successive terms would be included on a reminder notice ("Each year, you'll receive a reminder notice specifying price . . . for the next term of issues"). (FAC ¶ 13.)

Plaintiffs do not allege that the display of the automatic renewal offer terms was broken on the payment page they reviewed. Neither do Plaintiffs allege that this disclosure was illegible. Further, they do not allege that they did not understand the automatic renewal offer terms or that they did not agree to them by taking the affirmative action to click the "complete" button. (*Id.*) Rather, contrary to the requirements of *Boorstein*, Plaintiffs merely conclude that the offer terms "are a legal nullity" because Defendants allegedly violated the ARL. (FAC ¶ 14 (reciting verbatim the statutory requirements of the ARL).)

In addition to these defects in the FAC, Plaintiffs ignore facts subject to judicial notice that undermine their conclusory allegations of harm. Both Paragraph 13 of the complaint, and the complaint's attached exhibit, reference a communication that is sent before a customer's subscription renews for a subsequent term. This communication describes the upcoming charges a customer may incur and how to avoid them. (EP Decl. Exs. A–C.) There are no allegations in the complaint (nor could there be) that Plaintiffs did not receive this communication. Thus, any claim that Plaintiffs have standing because they were subject to an unexpected cost is undermined by the notice.[4] (*Id.*)

---

[4] To the extent Plaintiffs rely on their conclusory assertion that "[u]nbeknownst" to them, they were enrolled in "a program under which the 'subscriptions' would 'automatically renew' each year, at a much higher price," (FAC ¶¶ 10, 15), this

Lastly, the allegation that Plaintiffs' credit cards were charged is insufficient to allege harm absent an assertion that they paid such charge.  (FAC ¶¶ 9, 15.) Unlike paying with cash, a charge on a credit card is merely an obligation to pay in the future.  That obligation, however, can be discharged without costing the credit card holder money—*e.g.* a refund to the cardholder immediately after the charge was imposed.  Thus, to plead sufficient facts regarding an injury, the complaint cannot merely stop at an allegation that a charge was placed on Plaintiffs' credit cards.  *See Amirhamzeh v. Chase Bank USA, N.A.,* 2014 WL 641705, at *7 (C.D. Cal. Feb. 7, 2014) (dismissing consumer claims where plaintiff received pre-litigation full refund of credit card charge).

Because Plaintiffs fail to show injury or damage, they do not have standing and the complaint must be dismissed with prejudice.

### 2.      Plaintiffs Have Not Pled Any Facts Showing Reliance.

As noted, where plaintiffs base their claims on allegedly misleading conduct (as here), reliance must be pled separately from the alleged statutory violation.  *See Pratt v. Whole Foods Mkt. Cal., Inc.*, 2014 WL 1324288, *8 (N.D. Cal. Mar. 31, 2014) ("Plaintiff cannot circumvent the reliance requirement by simply pointing to a regulation or code provision that was violated by the alleged label misrepresentation, summarily claiming that the product is illegal to sell and therefore negating the need to plead reliance.").   "Reliance is established by pleading that 'the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct' but for defendants' misrepresentations or omissions." *McMillan v. Lowe's Home Ctrs., LLC*, 2016 WL 2346941, at *7 (E.D. Cal. May 4, 2016) (quoting *Tobacco II*, 46 Cal. 4th at 326).

Here, Plaintiffs do not even attempt to plead facts supporting reliance.  The complaint "does not say that [Plaintiffs] took, failed to take or abstained from

---

argument fails.  *Plaintiffs fail to allege facts explaining why the renewal programs were unknown to them.*  Also, the complaint's exhibit undermines the assertion.

taking any action because [they] did not receive an adequate … Notice….” *Cafferty Clobes Meriwether & Sprengel, LLP v. XO Commc'ns Servs., Inc.*, 2016 U.S. Dist. LEXIS 72692, at *7 (N.D. Ill. June 3, 2016) (dismissing breach of contract claim for failing to plead injury in action involving purported automatically renewing contracts).  Quite simply, Plaintiffs make no allegations that tie any purported violation of the ARL to their decision to subscribe to their selected magazines.  *See Hager v. Vertrue, Inc.*, 2011 WL 4501046, at *5-6 (D. Mass. Sept. 28, 2011).  Thus, separate and apart from failing to allege any injury, Plaintiffs also fail to allege reliance on any purported ARL violation.  *See Baxter v. Intelius, Inc.*, 2010 WL 3791487, at *5 (C.D. Cal. Sept. 16, 2010) (“The fact that Plaintiffs cannot find a basis for actual reliance means that the UCL and FAL claims must fail.”).

> ### B.   Plaintiffs Have Not Alleged Sufficient Facts of a Purported Violation of the ARL, Meaning All of Their Causes of Action Fail.

In addition to Plaintiffs' statutory violations failing due their failure to plead facts sufficient to find that they have standing, each and every claim pled fails because Plaintiffs failed to plead facts supporting a violation of the ARL—the predicate statute for each cause of action.

> ### 1.   The Allegations Do Not Plead a Violation of the ARL.

Plaintiffs' allegations are nothing more than a regurgitation of the requirements set forth in the ARL.  Missing are any facts that would undermine the conclusion that the disclosures are fully compliant with the law since they are formatted in a manner that clearly calls attention to the disclosures.  Thus, the complaint and attachments thereto are inadequate to support a plausible inference that Defendants violated the ARL.

> #### a.   Plaintiff Edgemon Failed to Plead Facts Regarding Defendants' Purportedly Faulty Disclosures.

As it pertains to Plaintiff Edgemon, the complaint lacks allegations regarding the form and content of the purportedly faulty disclosures underlying her claims.

Although she alleges "on information and belief" that the disclosures represented in the complaint's attached exhibit were "similar in form and content" to the disclosures she saw, she provides no facts to support such assertion. That is improper. *See Simonyan v. Ally Fin., Inc.,* 2013 WL 45453, at *2 (C.D. Cal. Jan. 3, 2013) (allegations based on "information and belief" containing nothing more than "rote recitation" of a claim's elements is insufficient).

### b. Plaintiffs Failed to Allege Facts Supporting Their Assertion that the Automatic Renewal Offer Terms Were Not Clearly and Conspicuously Disclosed.

Plaintiffs do not dispute that all the required information was disclosed. Nor could they—the disclosures meet each and every requirement of the ARL: (1) that the subscription will continue until the consumer cancels, (2) the cancellation policy, and (3) that the consumer's account will be charged automatically for successive terms. *Compare* Cal. Bus. & Prof. Code § 17601(b), *with* (FAC ¶¶ 11–13, Ex. 1 (disclosing that "[a]fter the first term, all selections will continue," that "[e]ach year, you'll receive a reminder notice specifying price . . . and billing terms for the next term of issues," and that "you authorize the account you provide to be charged the rate on the notice for the next term of issues unless you choose to cancel: 1-800-429-2550.").) Likewise, Plaintiffs do not appear to be seriously arguing that Defendants violated the ARL due to use of implied consent as opposed to affirmative consent, Cal. Bus. & Prof. Code § 17602(a)(2), or that the request for consent (the "Complete" button) was not within visual proximity of the renewal disclosures, *id.* at § 17602(a)(1).

Instead, their dispute appears to focus on the formatting of the disclosures, which they describe as "small." (FAC ¶ 13.) With respect to the subpart of the ARL governing formatting, the statute states that the disclosures must be "clear and conspicuous," which is defined as "[1] in larger type than the surrounding text, <u>or</u> [2] in contrasting type, font, or color to the surrounding text of the same size, <u>or</u> [3] set off from the surrounding text of the same size by symbols or other marks, in

a manner that clearly calls attention to the language…." *Id.* §§ 17601(c), 17602(a)(1) (emphasis added).  Because the ARL provides several methods for compliance with the clear and conspicuous provision, Plaintiffs must do more than make a conclusory allegation that the disclosures were "small."  They did not.[5]

Here, the automatic renewal offer terms are not contained on a separate webpage accessible via hyperlink or buried in prolix.[6]  The terms stand alone on the page with no surrounding body text.  A reasonable consumer would see the disclosures as separate and apart from the rest of the webpage.  Although the ARL does not expressly address the precise scenario here—where the disclosures have no surrounding text—the large, bolded, and underlined heading "Important Reward Details" and subsequent bold line of "Automatic Renewal Authorization" are formatted to clearly call a reasonable consumer's attention to the following disclosures.  There are no facts pled in the complaint that undermines the conclusion that the formatting is sufficient under the ARL.[7]

### c.   Plaintiffs Failed to Plead Facts Supporting Their Claim that They Did Not Receive the Required Acknowledgement.

Under the ARL, all a company is required to do vis-à-vis the acknowledgement requirement contained in § 17602(a)(3) is provide "an acknowledgment that includes the automatic renewal or continuous service offer

---

[5] When construing statutes, undefined words are given their usual and ordinary meaning.  *Kobzoff v. L.A. Cty. Harbor/UCLA Med. Ctr.*, 19 Cal. 4th 851, 860-61 (1998).  The usual and ordinary meaning of the word "text" means "the main body of matter in a manuscript, book, newspaper, etc., as distinguished from notes, appendixes, headings, illustrations, etc."  *Text*, RANDOM HOUSE WEBSTER'S UNABRIDGED DICTIONARY, 1963 (2d ed. 2001).

[6] "A party cannot avoid the terms of a contract on the ground that he or she failed to read it before signing."  *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049 (2001).

[7] Even if a defendant is found to not technically comply with the ARL, it can still qualify for the affirmative defenses of "substantial compliance" and the "voluntary payment doctrine."  *See S. Pac. Trans. Co. v. St. Bd. of Equalization*, 175 Cal. App. 3d 438, 442 (1985) ("[T]echnical deviations are not to be given the stature of noncompliance.");  *Am. Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (1961) ("a payment voluntarily made with knowledge of the facts affords no ground for an action to recover it back.").  Such defenses, however, are not at-issue in this motion.

terms, cancellation policy, and information regarding how to cancel in a manner that is capable of being retained by the consumer." This acknowledgement can be provided at any time. Cal. Bus. Prof. Code § 17602(d)(1).

Here, the payment page directed Plaintiffs to print a copy for their records. (FAC Ex. 1.) There are no factual allegations in the complaint that either they or a reasonable consumer were or was incapable of following that instruction in order to obtain a retainable copy of the compliant disclosures.

Further, the payment page notifies customers that they will be sent notices indicating when their subscriptions would renew, the renewal price, and the option to cancel prior to renewal—compliant notices that Plaintiffs do not (*and cannot*) deny receiving. (*Id.*; *see also, e.g.*, EP Decl. Ex. A ("[T]he magazine(s) listed below will continue for the next term of issues using the account number you agreed to be billed for your selection(s) and will be charged annually for Maxim at $37 for a total of 10 issues…. If you wish to discontinue, call 877-340-6783 by Feb 12 and no charge will appear.").) The complaint lacks well pled facts to support Plaintiffs assertion they did not receive an ARL-compliant acknowledgement.

### d.   Plaintiffs' Alternative Theory Regarding a Purported Material Change Also Fails.

As an alternative theory of liability, Plaintiffs claim Defendants violated the ARL by "having failed to provide plaintiffs and Class members with a clear and conspicuous notice of a material change in price and information regarding how to cancel." (FAC ¶ 35.) This theory, like Plaintiffs' theory in-principle, fails.

To support this theory, Plaintiffs harp on their claim that they were charged more for the subsequent subscription terms. (FAC ¶¶ 10, 15.) However, the fact the price was subject to change was disclosed to Plaintiffs before they affirmatively agreed to the subscriptions. (FAC ¶ 13 ("Each year, you'll receive a reminder notice specifying price plus . . . for the next term of issues and you authorize the account you provide to be charged the rate on the notice for the next term of issues

unless you choose to cancel.").)  Plaintiffs do not dispute that they received the notification prior to the subscription renewal informing Plaintiffs of the cancellation procedure and the price they would be charged if they did not cancel by the date specified.  Nor can they make such an assertion.  (EP Decl. Exs. A–C.)

   **e.**  **Plaintiffs Failed to Plead Absence of Good Faith.**

   Under the ARL, a defendant cannot be subjected to civil remedies if it acted in good faith.  Cal. Bus. & Prof. Code § 17604(b).  There are no allegations in the complaint, however, regarding a lack of good faith.  Nor can there be.  The exhibit attached to the complaint indicates that Plaintiffs were informed, *inter alia*: (a) "[a]fter the first term, all selections will continue," (b) "[e]ach year, you'll receive a reminder notice specifying price . . . and billing terms for the next term of issues," and (c) "you authorize the account you provide to be charged the rate on the notice for the next term of issues unless you choose to cancel: 1-800-429-2550." (FAC ¶ 13.)  These notices were presented in a stand-alone manner without surrounding text and with a large heading informing Plaintiffs that the disclosures below are "Important."  This is fatal to any claim under any statute for a violation of the ARL.  *See Holomaxx v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011) (dismissing claim under Communications Decency Act for failing to plead facts regarding lack of good faith); *e360 Insight, LLC v. Comcast Corp.,* 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008) (same).

   **2.**  **Plaintiffs' Derivative Claims Are Insufficiently Pled In Light of Their Failure to Plead an ARL Violation.**

   Absent a violation of the ARL, all of Plaintiffs' claims fail.  This is because, as pled, the purported ARL violations are the only support for the complaint. Paragraph 14 of the complaint, which provides the legal theory underlying all of Plaintiffs' claims, only references purported violations of the ARL's requirements. Further, each paragraph of the FAL claim (Count 1) cites the provisions of the ARL and no other statute or legal principle.  Plaintiffs' CLRA claim (Count 2) merely

parrots the CLRA's provisions and contains no independent explanation for why Defendants should be found liable under that statute beyond the earlier Paragraph 14. Plaintiffs' conversion (Count 3) and Unjust Enrichment claims (Count 5) are expressly premised on Defendants purported violation of "California law." And Plaintiffs' UCL claim (Count 4) is only supported by cross-referencing the purported ARL and CLRA violations, and Plaintiffs' conversion claim. (FAC ¶ 52.) Accordingly, despite bringing five separate causes of action, all claims are predicted on Plaintiffs' defective assertion of an ARL violation.

Because the assertion that Defendants violated the ARL lacks sufficient factual support, all of Plaintiffs' claims must be dismissed. *See Stiles v. Wells Fargo Bank*, 2014 WL 7146950, at *8 (N.D. Cal. Dec. 15, 2014) ("Plaintiff has not stated facts supporting an actual or incipient violation of any underlying statutes to support a UCL claim . . . , nor has she adequately pleaded any other predicate causes of action. Accordingly, as Plaintiff's substantive causes of action fail, her UCL claim based upon those causes of action fail as well.); *accord Otto v. Abbott Labs., Inc.*, 2013 U.S. Dist. LEXIS 53287, *5–6, 26 (C.D. Cal. Mar. 15, 2013).

Additionally, any assertion that the UCL or CLRA claims can nevertheless survive despite Plaintiffs failing to plead an ARL violation cannot be supported. Claims under California's UCL and CRLA are governed by "reasonable consumer" test, which requires a showing that "members of the public are likely to be deceived" by the subject representation. *Otto*, 2013 U.S. Dist. LEXIS 53287, at *8–9 (quotation omitted). Under the reasonable consumer test, disclosures like those at issue here are sufficient to provide notice of recurring charges. *See Berry v. Webloyalty.com, Inc.*, No. 2011 WL 1375665, at *4–7 (S.D. Cal. Apr. 11, 2011), *vacated and remanded,* 517 F. App'x 581 (9th Cir. 2013); *Hook v. Intelius, Inc.,* 2011 WL 1196305, at *9–10 (M.D. Ga. Mar. 28, 2011); *Baxter v. Intelius, Inc.,* 2010 WL 3791487, at *4 (C.D. Cal. Sept. 16, 2010); *In re Vistaprint Corp. Mktg. & Sales Prac. Litig.,* 2009 WL 2884727, at *11–12 (S.D. Tex. Aug. 31, 2009), *aff'd*

*sub nom. Bott v. Vistaprint USA Inc.,* 392 F. App'x 327 (5th Cir. 2010)); *Hager,* 2011 WL 4501046, at *5–6.

### C.    Plaintiffs' CLRA, Conversion, and Unjust Enrichment Claims (Counts 2, 3, & 5) Must Be Dismissed for Independent Reasons.

Even if Plaintiffs' adequately pled a violation of the ARL (they do not), Plaintiffs' CLRA, conversion and unjust enrichment claims still fail.

### 1.    Plaintiffs Fail to Plead a Violation of the CLRA (Count 2).

Plaintiffs base their second cause of action—alleged violations of the CLRA—on California Civil Code Section 1770, subsections (a)(5), (a)(9), (a)(13), and (a)(17).  (FAC ¶ 42.)  However, Plaintiffs fail to allege any facts that would suggest a violation of any of the listed subsections.

### a.    Subpart (a)(5): No Facts About Sponsorship, etc.

Section 1770(a)(5) makes it unlawful to "[r]epresent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

Nowhere does the complaint allege that Defendants made any representations—false or otherwise—regarding sponsorship, approval, ingredients, uses, or benefits.  Further, the complaint does not include any allegations that Defendants made inaccurate representations regarding characteristics (*i.e.* contents of the magazines) or quantity (*i.e.* magazines per term).  In light of the complete absence of allegations on point, this claim should be dismissed.  *See Fraker v. Bayer Corp.*, 2009 WL 5865687, at *9 (E.D. Cal. Oct. 6, 2009) (dismissing plaintiff's claim under section 1770(a)(5) because "Defendants advertising makes no claim to sponsorship or approval and the evidence presented in the FAC, even if admissible, does not go to show that any of Plaintiffs claims with regard to characteristics, ingredients, uses, benefits or quantities are false").

**b.      Subpart (a)(9): No Facts About Bait-and-Switch.**

Section 1770(a)(9) makes it unlawful to "[a]dvertis[e] good or services with intent not to sell them as advertised."  Again, Plaintiffs' claim under this provision suffers from a complete lack of facts.  There is no allegation that Defendants used bait and switch tactics—*i.e.* there is no allegation that Plaintiffs did not receive the magazines they selected.  Nor is there an allegation that Defendants expressly advertised a lower price for the subsequent term that was not utilized.  Indeed, Exhibit 1 references that customers will be informed of the price for the subsequent term in a notice.  Yet, there is no allegation in the complaint that such notice was not sent.  Accordingly, this claim should be dismissed.  *See Kelly v. BP W. Coast Prods. LLC*, 2014 WL 7409220, at *8 (E.D. Cal. Dec. 30, 2014) (dismissing claim under subpart (a)(9) when there were no allegations of bait and switch tactics).

**c.      Subpart (a)(13): No Facts About Price Reductions.**

Section 1770(a)(13) makes it unlawful to "[m]ak[e] false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  This claim is particularly puzzling given the there is no allegation in the complaint of any price reduction, but rather "a price increase…." (FAC ¶¶ 10, 15.)  This claim should be dismissed.

**d.      Subpart (a)(17): No Facts About Contingencies.**

Section 1770(a)(17) makes it unlawful to "[r]epresent[] that the consumer will receive a rebate, discount, or other economic benefit, if the earning of the benefit is contingent on an event to occur subsequent to the consummation of the transaction."  The legislative history addressing this subsection explains that it was designed to "prevent a situation where the consumer would 'be required to buy an additional product before he could receive the advertised discount, or that he buy a more expensive and high quality product than the one advertised.'" *Kramer v. Intuit Inc.*, 121 Cal. App. 4th 574, 580 (2004), *as modified on denial of reh'g* (Aug. 11, 2004) (quotation omitted).

Like the other claims under Section 1770, the complaint fails to include a single fact that supports this claim.  There is no allegation of any contingent future event—*i.e.* no allegation that Plaintiffs were required to buy an additional product before receiving the advertising discount.  Rather, the promotional offer followed an online purchase, and applied to the *first* term of issues (not subsequent terms).  Moreover, Plaintiffs could cancel successive terms without forfeiting the discount on the earlier issues.  Thus, no further purchase was even contemplated, much less required.  Accordingly, this claim should be dismissed.

### 2.      Plaintiffs Fail to Plead Conversion (Count 3).

Plaintiffs' third cause of action is for alleged conversion.  "Conversion is the wrongful exercise of dominion over the property of another."  *Oakdale Vill. Grp. v. Fong*, 43 Cal. App. 4th 539, 543–44 (1996), *as modified on denial of reh'g* (Apr. 10, 1996).  To state a claim for conversion, a plaintiff must allege "ownership or right to possession of the property at the time of the conversion; the defendant's conversion by a wrongful act or disposition of property rights; and damages."  *Id.* In California, "[m]oney cannot be the subject of an action for conversion unless a specific sum capable of identification is involved."  *Williamson*, 2012 WL 1438812, at *4.  "California cases permitting an action for conversion of money typically involve those who have misappropriated, commingled, or misapplied specific funds held for the benefit of others."  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal. App. 4th 384, 396 (2007).  "Thus, a claim for conversion may be stated when there is a special relationship between the parties where the defendant has a duty to retain or apply funds on the plaintiff's behalf."  *Williamson*, 2012 WL 1438812, at *4.

Plaintiffs' claim for conversion fails.  Because the subject of their claim for conversion is money—*i.e.* purported "charges made by defendants to plaintiffs' and Class members' credit cards, debit cards, and/or third party payment accounts"— Plaintiffs must plead facts establishing a special relationship between the parties.

They fail to do so.  (FAC ¶ 48 (alleging only that the amount of money is "capable of identification".)  Absent allegations of a special relationship, Plaintiffs' claim for conversion must be dismissed.

### 3.      Unjust Enrichment (Count 5) Cannot Survive Alone.

"Unjust enrichment is not a cause of action, [ ] or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (internal quotation marks and citation omitted).  "It is synonymous with restitution." *Id.*  Where a plaintiff's underlying causes of action fail, a "claim for unjust enrichment cannot stand alone as an independent claim for relief." *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *5 (N.D. Cal. Dec. 17, 2009) (citing *Jogani v. Super Ct.*, 165 Cal. App. 4th 901, 911 (2008)); *accord Ebner v. Fresh, Inc.*, 818 F.3d 799, 808 (9th Cir. 2016) (affirming dismissal of unjust enrichment claim when underlying claims failed).

As shown, Plaintiffs' claims for purported violations of the FAL, UCL, CLRA fail due many reasons, including due to the lack of facts regarding the issue of standing.  Further, the conversion claim is legally deficient.  With no successful predicate cause of action, Plaintiffs' claim for unjust enrichment likewise fails.

### D.      Time Is an Improper Party and Should Be Dismissed.

The complaint improperly names Time as a defendant based on the purported acts of Synapse.  This goes against the "fundamental principle of corporate law that a parent corporation and its subsidiary are treated as separate legal entities." *Soriano v. Countrywide Home Loans, Inc.*, 2011 WL 1362077, at *9 (N.D. Cal. Apr. 11, 2011); *see also Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 231 A.2d 450, 452–53 (1967), *aff'd*, 239 A.2d 629 (1968).  To hold a parent company liable for the acts of its subsidiary, the plaintiff must show an exception applies. *Soriano*, 2011 WL 1362077, at *9; *see In re Frito-Lay N. Am., Inc. All Nat. Litig.***,** 2013 WL 4647512,  *5–6 (E.D.N.Y. Aug. 29, 2013) (dismissing PepsiCo from action where there were no facts regarding its involvement in the subsidiary's conduct at-issue).

Plaintiffs appear to invoke an agency argument to support their allegations against Time. (FAC ¶ 5.)[8]  Under an agency theory, a parent may be held liable where the factual allegations show the "subsidiary acts as the agent of the parent." *Soriano*, 2011 WL 1362077, at *9 (citation omitted); *see Pac. Can Co. v. Hewes*, 95 F.2d 42, 46 (9th Cir. 1938) ("Where one corporation is controlled by another, the former acts not for itself but as directed by the latter, the same as an agent, and the principal is liable for the acts of its agent within the scope of the agent's authority.").  Plaintiffs also try to support their allegations against Time with an alter-ego theory, (FAC ¶ 5), *i.e.*, a claim that "a parent corporation may be liable for the acts of its subsidiary if 'an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation'". *Soriano*, 2011 WL 1362077, at *9 (quotation omitted).  Plaintiffs fail to plead sufficient facts under either theory.

### 1.    Plaintiffs Do Not Plead That Synapse Is an Agent of Time.

"The burden of proving an agency relationship rests on the party asserting it." *Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*, 224 F.R.D. 661, 667 (W.D. Wash. 2004).  "To establish agency requires a showing that the parent so controls the subsidiary that it becomes merely the instrumentality of the parent." *Soriano*, 2011 WL 1362077, at *9–10 ("Plaintiff must establish '[d]ominion ... so complete [and] interference so obtrusive' that the parent is a principal and the subsidiary a mere agent." (quoting *Pac. Can Co.*, 95 F.2d at 45–46)).

The complaint falls far short of meeting this standard.  In fact, Plaintiffs fail to allege *any* facts suggesting an agency relationship.  They merely assert that Synapse is a wholly-owned subsidiary of Time, and then conclude that "Time so controls and conducts the affairs of Synapse so as to render Synapse a mere

---

[8] Given there are no facts to support Time's inclusion in the case, the Court need not go through a choice of law analysis between the forum state's law and the law of the state of incorporation (Delaware).  Regardless of which law applies, Plaintiffs have not pled sufficient facts to permit them to disregard corporate structure.

instrumentality, agency, conduit, or adjunct of Time." (FAC ¶ 5.) This is entirely inadequate. *Expeditors*, 224 F.R.D. at 667. "The fact that [Synapse] is a wholly-owned subsidiary of [Time], alone, does not establish that an agency relationship exists between the two companies." *Id.* ("[P]roof of organization of one corporation by another, or ownership by one corporation of all the capital stock of another, or common officers and directors, without more, is not substantial evidence as to the agency relationship." (quotation omitted).

Thus, Time's purported liability cannot be predicated on an agency theory.

### 2.    Plaintiffs Do Not Plead Time Is the Alter-Ego of Synapse.

The "alter-ego" theory "requires a showing of more than just ... control of the subsidiary by the parent." *Soriano*, 2011 WL 1362077, at *9 (internal quotations omitted). Rather, a plaintiff must plead facts indicating "a disregard of [the] corporate form, *e.g.,* commingling of funds or disregard of legal formalities." *M/V Am. Queen v. San Diego Marine Const. Corp.,* 708 F.2d 1483, 1489–90 (9th Cir. 1983). Additionally, "in order to disregard the corporate entity, courts have generally held that it is not enough that the company is controlled by, or a mere instrumentality or conduit of, its shareholders, but it must also appear that to recognize their separate entities would lead to an injustice." *Von Brimer v. Whirlpool Corp.*, 362 F. Supp. 1182, 1194 (N.D. Cal. 1973), *aff'd in part, rev'd in part*, 536 F.2d 838 (9th Cir. 1976); *see also M/V Am. Queen*, 708 F.2d at 1489–90 ("[I]t must appear that injustice will result from recognizing [the subsidiary] as a separate entity and that [the parent company] had a fraudulent intent or an intent to circumvent statutory or contractual obligations in its control of [the subsidiary].").

Again, Plaintiffs fail to meet this standard. Lacking any factual support, Plaintiffs simply conclude out of thin air that "there is such a unity of interest between [Defendants] that their separateness has ceased" and that "disregard of the corporate separateness of Synapse and SynapseConnect is necessary to avoid . . . an unjust result." (FAC ¶ 5.) But Plaintiffs do not allege a single fact to support *how*

1    Time has disregarded "corporate separateness" or *why* dismissing Time would

2    produce "an unjust result."  Plaintiffs assert nothing more than bare conclusions,

3    and thus fail to adequately allege Time should be liable under the alter-ego theory.

4    *See Mindlab Media, LLC v. LWRC Int'Z LLC,* 2012 WL 386695, at *4 (C.D. Cal.

5    Feb. 6, 2012) (complaint failed to plead alter ego liability where it contained only

6    conclusory allegations regarding that theory).

7          Because Plaintiffs fail to allege any basis for holding Time liable for

8    Synapse's purported acts, Time should be dismissed with prejudice.

9          **E.     Plaintiffs Do Not Have Standing for Injunctive Relief.**

10         Plaintiffs seek injunctive relief for purported violations of the FAL, UCL,

11   and CLRA.  (FAC ¶¶ 37, 44, 58.)  "[I]t is not the presence or 'absence of a past

12   injury' that determines Article III standing to seek injunctive relief; it is the

13   imminent 'prospect of future injury.'" *Ervine v. Desert View Reg'l Med. Ctr.*

14   *Holdings, LLC*, 753 F.3d 862, 868 (9th Cir. 2014) (quoting *Chapman v. Pier 1*

15   *Imports (U.S.) Inc.*, 631 F.3d 939, 951 (9th Cir. 2011)).

16         Plaintiffs do not (and cannot) allege facts to plausibly suggest their alleged

17   injury will occur again.  Rather, Plaintiffs' complaint is evidence that they are now

18   aware of the continuous nature of their prior subscriptions (which were terminated

19   before the lawsuit was filed).  Moreover, Plaintiffs do not allege that Defendants

20   will continue to charge their credit cards in the future.  Accordingly, Plaintiffs'

21   request for injunctive relief is improper and should be dismissed.

22   **V.    CONCLUSION.**

23         For the foregoing reasons, Defendants respectfully request that the Court

24   grant its motion to dismiss without leave to amend.

25    Dated: August 2, 2016                         COOLEY LLP
                                                     */s/ Darcie A. Tilly (213715)*
26                                                   Attorneys for Defendants SYNAPSE
                                                     GROUP, INC., SYNAPSECONNECT,
27                                                   INC., and TIME INC.

28