1   COOLEY LLP
    MICHELLE C. DOOLIN (179445)
2   (doolinmc@cooley.com)
    DARCIE A. TILLY (239715)
3   (dtilly@cooley.com)
    HEATHER M. SPEERS (305380)
4   (hspeers@cooley.com)
    4401 Eastgate Mall
5   San Diego, CA  92121
    Telephone: (858) 550-6000
6   Facsimile:  (858) 550-6420

7   Attorneys for Defendants
    SYNAPSE GROUP, INC.;
8   SYNAPSECONNECT, INC.;
    and TIME INC.
9
                        UNITED STATES DISTRICT COURT
10
                    SOUTHERN DISTRICT OF CALIFORNIA
11

12
    SHANNON DALE PRICE and             Case No. 3:16-cv-01524-BAS-BLM
13  CHERYL EDGEMON, individually
    and on behalf of all others similarly
14  situated,                          **MEMORANDUM OF POINTS
                                        AND AUTHORITIES IN
15              Plaintiffs,            SUPPORT OF DEFENDANTS'
                                        MOTION TO DISMISS
16      v.                             PLAINTIFFS' SECOND
                                        AMENDED CLASS ACTION
17  SYNAPSE GROUP, INC., a             COMPLAINT**
    Delaware corporation;
18  SYNAPSECONNECT, INC., a            **NO ORAL ARGUMENT UNLESS
    Delaware corporation; TIME INC., a  REQUESTED BY THE COURT**
19  Delaware corporation; and DOES 1–
    50, inclusive,                     **[SPECIAL    BRIEFING    SCHEDULE
20                                      ORDERED]**
                Defendants.
21                                       Date:      November 21, 2016
                                         Judge:     Hon. Cynthia Bashant
22                                       Courtroom: 4B

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION. ...........................................................................III

II. BACKGROUND AND PROCEDURAL HISTORY. .......................2

    A.  California's Automatic Renewal Law...................................2

    B.  The Parties.............................................................................3

    C.  Procedural Posture. ...............................................................3

    D.  Summary of the Second Amended Complaint's Allegations. ..............3

    E.  Class Definition and Relief Sought.......................................6

III. LEGAL STANDARDS. ..................................................................6

    A.  Standards on a Motion to Dismiss under FRCP 12(b)(1) and (6). .......6

    B.  Elements of Plaintiffs' Causes of Action..............................7

IV. THE COMPLAINT SHOULD BE DISMISSED. .........................9

    A.  Plaintiffs' Statutory-Based Claims (Counts 1, 2, & 4) Fail Because Plaintiffs Do Not Adequately Plead Standing. ...................................9

        1.  Plaintiffs Have Not Pled Injury Caused by Defendants. ............9

        2.  Plaintiffs Have Not Pled Any Facts Showing Reliance. ..........11

    B.  Plaintiffs Have Not Alleged Sufficient Facts of a Purported Violation of the ARL, Meaning All of Their Causes of Action Fail..13

        1.  The Allegations Do Not Plead a Violation of the ARL............13

            a.  Plaintiff Edgemon Failed to Plead Facts Regarding Defendants' Purportedly Faulty Disclosures.................13

            b.  Plaintiffs Failed to Allege Facts Supporting Their Assertion that the Automatic Renewal Offer Terms Were Not Clearly and Conspicuously Disclosed. ..........13

            c.  Plaintiffs Failed to Plead Facts Supporting Their Claim that They Did Not Receive the Required Acknowledgement.........................................................15

            d.  Plaintiffs' Alternative Theory Regarding a Purported Material Change Also Fails.........................................16

            e.  The SAC Negates Plaintiffs' Allegations of Scienter....16

        2.  Plaintiffs' Derivative Claims Are Insufficiently Pled In Light of Their Failure to Plead an ARL Violation. .................17

    C.  Plaintiffs' CLRA, Conversion, and Unjust Enrichment Claims (Counts 2, 3, & 5) Must Be Dismissed for Independent Reasons. .....18

        1.  Plaintiffs Fail to Plead a Violation of the CLRA (Count 2).....18

            a.  Subpart (a)(5): No Facts About Sponsorship, etc. .........18

            b.  Subpart (a)(9): No Facts About Bait-and-Switch...........19

            c.  Subpart (a)(13): No Facts About Price Reductions........19

**TABLE OF CONTENTS**
**(continued)**

Page

       d.     Subpart (a)(17): No Facts About Contingencies. ............19

    2.     Plaintiffs Fail to Plead Conversion (Count 3). ........................20

    3.     Unjust Enrichment (Count 5) Cannot Survive Alone...............21

  D.    Time Is an Improper Party and Should Be Dismissed.......................21

    1.     Plaintiffs Do Not Plead That Synapse Is an Agent of Time.....22

    2.     Plaintiffs Do Not Plead Time Is the Alter-Ego of Synapse......23

  E.    Plaintiffs Do Not Have Standing for Injunctive Relief......................25

V.    CONCLUSION. .........................................................................................25

Cooley LLP
Attorneys At Law
San Diego

1

## TABLE OF AUTHORITIES

2

**Page**

3  **Cases**

4  *Am. Oil Serv. v. Hope Oil Co.*,
      194 Cal. App. 2d 581 (1961) .................................................................... 15
5
   *Amirhamzeh v. Chase Bank USA, N.A.*,
6     2014 WL 641705 (C.D. Cal. Feb. 7, 2014) ............................................. 11

7  *Ashcroft v. Iqbal*,
      129 S.Ct. 1937 (2009) ............................................................................ 2, 7
8
   *Baxter v. Intelius, Inc.*,
9     2010 WL 3791487 (C.D. Cal. Sept. 16, 2010) .................................. 13, 18

10 *Bell Atl. v. Twombly*,
      550 U.S. 544 (2007) .................................................................................. 7
11
   *Berry v. Webloyalty.com, Inc.*,
12    No. 2011 WL 1375665 (S.D. Cal. Apr. 11, 2011), *vacated and
      remanded*, 517 F. App'x 581 (9th Cir. 2013) ........................................ 18
13
   *Boorstein v. CBS Interactive, Inc.*,
14    222 Cal. App. 4th 456 (2013) .................................................................... 9

15 *Boorstein v. Men's J. LLC*,
      2012 WL 2152815 (C.D. Cal. June 14, 2012) .......................................... 9
16
   *Brown v. Wells Fargo Bank, NA*,
17    168 Cal. App. 4th 938 (2008) .................................................................. 12

18 *Cafferty Clobes Meriwether & Sprengel, LLP v. XO Commc'ns Servs., Inc.*,
      2016 U.S. Dist. LEXIS 72692 (N.D. Ill. June 3, 2016) ........................... 12
19
   *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
20    20 Cal. 4th 163 (1999) .............................................................................. 8

21 *Chapman v. Pier 1 Imports (U.S.) Inc.*,
      631 F.3d 939 (9th Cir. 2011) ................................................................... 25
22
   *Durell v. Sharp Healthcare*,
23    183 Cal. App. 4th 1350 (2010) .................................................................. 9

24 *e360 Insight, LLC v. Comcast Corp.*,
      546 F. Supp. 2d 605 (N.D. Ill. 2008) ...................................................... 17
25
   *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*,
26    753 F.3d 862 (9th Cir. 2014) ................................................................... 25

27 *Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*,
      224 F.R.D. 661 (W.D. Wash. 2004) .................................................. 22, 23
28

COOLEY LLP
ATTORNEYS AT LAW
SAN DIEGO

iii

MEMO IN SUPPORT OF MOTION TO DISMISS
CASE NO. 3:16-CV-01524-BAS-BLM

# TABLE OF AUTHORITIES
## (continued)

Page

*Fraker v. Bayer Corp.*,
2009 WL 5865687 (E.D. Cal. Oct. 6, 2009)................................................ 19

*In re Frito-Lay N. Am., Inc. All Nat. Litig.*,
2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013) .......................................... 22

*Hager v. Vertrue, Inc.*,
2011 WL 4501046 (D. Mass. Sept. 28, 2011)................................... 12, 18

*Hawkins v. Hawkins*,
50 Cal. 558 (1875) .................................................................................. 12

*Hernandez v. Atl. Fin. Co.*,
105 Cal. App. 3d 65 (1980) ...................................................................... 9

*Holomaxx v. Microsoft Corp.*,
783 F. Supp. 2d 1097 (N.D. Cal. 2011) .................................................. 17

*Hook v. Intelius, Inc.*,
2011 WL 1196305 (M.D. Ga. Mar. 28, 2011) ........................................ 18

*Hovsepian v. Apple, Inc.*,
2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ........................................ 21

*Jogani v. Super Ct.*,
165 Cal. App. 4th 901 (2008) .................................................................. 21

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .................................................................. 7

*Kelly v. BP W. Coast Prods. LLC*,
2014 WL 7409220 (E.D. Cal. Dec. 30, 2014) ........................................ 19

*Kobzoff v. L.A. Cty. Harbor/UCLA Med. Ctr.*,
19 Cal. 4th 851 (1998) ............................................................................ 14

*Kramer v. Intuit Inc.*,
121 Cal. App. 4th 574 (2004), *as modified on denial of reh'g* (Aug. 11, 2004)................................................................................................ 20

*Kwikset Corp. v. Super. Ct.*,
51 Cal. 4th 310 (2011).....................................................................7, 8, 9

*Lavie v. Procter & Gamble Co.*,
105 Cal. App. 4th 496 (2003) .................................................................... 8

*Leek v. Cooper*,
194 Cal. App. 4th 399 (2011) .................................................................. 24

*M/V Am. Queen v. San Diego Marine Const. Corp.*,
708 F.2d 1483 (9th Cir. 1983) ........................................................... 23, 24

**TABLE OF AUTHORITIES**
(continued)

Page

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
  89 Cal. App. 4th 1042 (2001) ............................................................... 12

*Mason v. Network of Wilmington, Inc.*,
  No. CIV.A. 19434-NC, 2005 WL 1653954 (Del. Ch. July 1, 2005) ..................... 24

*McBride v. Boughton*,
  123 Cal. App. 4th 379 (2004) ............................................................... 21

*McMillan v. Lowe's Home Ctrs., LLC*,
  2016 WL 2346941 (E.D. Cal. May 4, 2016) ................................................ 11, 12

*Meyer v. Sprint Spectrum L.P.*,
  45 Cal. 4th 634 (2009) ......................................................................... 9

*Mindlab Media, LLC v. LWRC Int'Z LLC*,
  2012 WL 386695 (C.D. Cal. Feb. 6, 2012) ................................................ 25

*Navarro v. Block*,
  250 F.3d 729 (9th Cir. 2001) ................................................................. 6

*Oakdale Vill. Grp. v. Fong*,
  43 Cal. App. 4th 539 (1996), *as modified on denial of reh'g* (Apr. 10,
  1996) .............................................................................................. 20

*Otto v. Abbott Labs., Inc.*,
  2013 U.S. Dist. LEXIS 53287 (C.D. Cal. Mar. 15, 2013) ................................ 17, 18

*Pac. Can Co. v. Hewes*,
  95 F.2d 42 (9th Cir. 1938) .................................................................... 22

*Pauley Petroleum, Inc. v. Cont'l Oil Co.*,
  231 A.2d 450 (1967), *aff'd*, 239 A.2d 629 (1968) ...................................... 21

*PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro,
  LLP*,
  150 Cal. App. 4th 384 (2007) ............................................................... 20

*Pratt v. Whole Foods Mkt. Cal., Inc.*,
  2014 WL 1324288 (N.D. Cal. Mar. 31, 2014) ............................................. 11

*S. Pac. Trans. Co. v. St. Bd. of Equalization*,
  175 Cal. App. 3d 438 (1985) ................................................................. 15

*Sanders v. Apple Inc.*,
  672 F. Supp. 2d 978 (N.D. Cal. 2009) ...................................................... 9

*Sandoval v. Pharmacare US, Inc.*,
  2016 WL 3554919 (S.D. Cal. June 10, 2016) .............................................. 6

**TABLE OF AUTHORITIES**
(continued)

Page

*Simonyan v. Ally Fin., Inc.*,
2013 WL 45453 (C.D. Cal. Jan. 3, 2013)................................................. 13

*Soriano v. Countrywide Home Loans, Inc.*,
2011 WL 1362077 (N.D. Cal. Apr. 11, 2011)...............................21, 22, 23

*Sperling v. DSW Inc.*,
2016 WL 354319 (C.D. Cal. Jan. 28, 2016).............................................. 8

*Stiles v. Wells Fargo Bank*,
2014 WL 7146950 (N.D. Cal. Dec. 15, 2014) ......................................... 17

*In re Tobacco II Cases*,
46 Cal. 4th 298 (2009) ........................................................... 7, 8, 11

*In re Vistaprint Corp. Mktg. & Sales Prac. Litig.*,
2009 WL 2884727 (S.D. Tex. Aug. 31, 2009), *aff'd sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010) ......................... 18

*Von Brimer v. Whirlpool Corp.*,
362 F. Supp. 1182 (N.D. Cal. 1973), *aff'd in part, rev'd in part*, 536 F.2d 838 (9th Cir. 1976) ................................................................. 23

*Williamson v. Reinalt-Thomas Corp.*,
2012 WL 1438812 (N.D. Cal. Apr. 25, 2012)..........................8, 9, 20, 21

**Statutes**

Cal. Bus. & Prof. Code
§ 17200 ......................................................................................... 8
§ 17204 ...................................................................................... 8, 9
§ 17535 ...................................................................................... 7, 9
§ 17600 .................................................................................. *passim*
§ 17601(b) ..................................................................................... 14
§ 17601(b) ..................................................................................... 2
§ 17601(c) .............................................................................. 2, 3, 14
§ 17602(a) ..................................................................................... 2
§ 17602(a)(1) .............................................................................. 2, 14
§ 17602(a)(2) ................................................................................. 14
§ 17602(a)(3) ............................................................................ 3, 15
§ 17602(d)(1) ................................................................................. 15
§ 17604 ......................................................................................... 3
§ 17604(b) .................................................................................... 16

# TABLE OF AUTHORITIES
### (continued)

**Page**

Cal. Civ. Code
§ 1750, Cal. Consumer Legal Remedies Act .................................................*passim*
§ 1770 .............................................................................................................20
§ 1770(a) ..........................................................................................................8
§ 1770(a)(5) ...............................................................................................18, 19
§ 1770(a)(9) ...............................................................................................18, 19
§ 1770(a)(13) .............................................................................................18, 19
§ 1770(a)(17) .............................................................................................18, 19
§ 1780(a) ......................................................................................................8, 9

**Other Authorities**

Fed. R. Civ. P.
8 .......................................................................................................................7
9(b) ..................................................................................................................7
12(b)(6) .........................................................................................................6, 7

Random House Webster's Unabridged Dictionary (2d ed. 2001)...............................14

U.S. Const. art. III..............................................................................................2

Cooley LLP
Attorneys At Law
San Diego

vii

Memo In Support of Motion to Dismiss
CASE NO. 3:16-CV-01524-BAS-BLM

# I.    INTRODUCTION.

Synapse Group, Inc. is a 25 year old (Better Business Bureau A+ rated) marketing company for magazine subscription sales.   It is the leading magazine marketer in the U.S. representing major publishers, including its parent company, Time Inc. ("Time").   SynapseConnect, Inc., (with Synapse Group, Inc., "Synapse", and with Time, "Defendants") provides magazine subscription offers to consumers.

The instant lawsuit attempts to castigate a practice in the magazine industry that provides customers the convenience of continuing to receive the magazines they love without the hassle of having to mail in renewal forms each subscription term.   The baseless attacks by plaintiffs Shannon Dale Price and Cheryl Edgemon ("Plaintiffs") on automatically renewing subscriptions, however, cannot survive given California law expressly permits renewing contracts.

The Automatic Renewal Law, Bus. & Prof. Code Section 17600 ("ARL") regulates how customers are to be informed of continuous subscription renewal terms. At issue in this suit are magazines Plaintiffs received after responding to an online promotion from Defendants.   Plaintiffs' subscriptions fully complied with the ARL. When obtaining their subscriptions Plaintiffs were provided prominent and easy to understand disclosures informing them that (1) their subscription will continue until cancelled, (2) their account will be charged automatically for successive terms; and (3) the applicable cancellation policy.   These disclosures were on a page where they were the only body text and under a heading titled "Important."   Plaintiffs clicked a "Complete" button immediately underneath these terms to assent to them.   Plaintiffs were also sent a notice in the mail before they incurred any charges for the second term of their subscriptions.

Despite these fulsome, prominent and legally sufficient disclosures, Plaintiffs nevertheless claim they were not adequately informed of the renewal terms for their subscriptions.   Plaintiffs thus assert claims under the Unfair Competition Law ("UCL"), False Advertising Law ("FAL"), and Consumer Legal Remedies Act

("CLRA"), as well as for conversion and unjust enrichment, based on Defendants' purported ARL violations.  None of the claims can survive.  As discussed below, Plaintiffs' *third attempt* in four months at stating a claim—the Second Amended Complaint ("SAC")—suffers from a myriad of defects warranting its dismissal.

<u>First</u>, Plaintiffs lack standing to bring their claims under the FAL, CLRA and UCL.  These claims require a plaintiff to plead facts establishing injury and reliance in order to have standing to bring suit.  Yet, Plaintiffs' purported injuries are merely the claimed violation of the FAL, CLRA and UCL.  This is improper.  Further, the SAC is bereft of factual allegations supporting Plaintiffs' purported reliance.

<u>Second</u>, the SAC fails to include facts supporting Plaintiffs' assertion that Defendants violated the ARL.  Plaintiffs merely parrot the ARL and then leap to the conclusion Defendants violated it.  This is insufficient under *Iqbal* and unsupportable in light of the disclosures provided.

<u>Third</u>, Plaintiffs claims for conversion and unjust enrichment are premised on invalid legal theories and cannot survive independent of the other claims.

<u>Fourth</u>, the SAC improperly names Time as a defendant, despite the absence of any allegations concerning Time's conduct.  As a separate legal entity, Time is not liable for the acts of its subsidiaries without a showing of exceptional circumstances.  Plaintiffs fail to plead any facts establishing such a showing.

<u>Fifth</u>, Plaintiffs have not shown a risk of future harm.  Thus, Plaintiffs lack Article III standing to assert claims for injunctive relief.

Accordingly, Plaintiffs' complaint should be dismissed with prejudice.

## II.   BACKGROUND AND PROCEDURAL HISTORY.

### A.   California's Automatic Renewal Law.

Enacted in 2010, the ARL regulates the language companies may use to obtain affirmative consent to automatically renewing or continuous service contracts, Cal. Bus. & Prof. Code §§ 17601(b), 17602(a), the formatting of such language, *id.*, §§ 17601(c), 17602(a)(1), the acknowledgement of purchase that is to be provided to

1  purchasers, *id.*, § 17602(a)(3), and how notice of material changes to contract terms
2  should be made, *id.*, § 17602(c).  The ARL provides that a violation of its terms is not
3  a crime, and that it is enforceable via other statutes.  *Id.*, § 17604.  It further contains a
4  clause stating that "[i]f a business complies with the provisions of this article in good
5  faith, it shall not be subject to civil remedies."  *Id.*

6      **B.**    **The Parties.**

7       Plaintiffs allege they are San Diego residents who obtained magazine
8  subscriptions from Defendants.  (SAC ¶¶1, 29, 35.)  Plaintiffs allege that Synapse is
9  involved in the business of marketing magazine subscriptions, including the magazine
10  subscriptions at-issue in the SAC.  (*Id.*, at ¶¶2–3.)  Although Plaintiffs allege no facts
11  regarding conduct by Time, they seek to pull it into this dispute based on allegations
12  that it is the parent corporation of Synapse.  (*Id.*, at ¶¶4–5, 38.)

13      **C.**    **Procedural Posture.**

14       On May 17, 2016, Plaintiffs filed a complaint in San Diego Superior Court.  On
15  June 17, 2016, Defendants removed the action to this Court.  (D.E. 1.)  On July 12,
16  2016, Plaintiffs filed a motion for leave to file a first amended complaint, which was
17  granted on July 18, 2016.  (D.E. 9–10.)  Following Defendants' motion to dismiss the
18  amended complaint (D.E. 12), Plaintiffs amended their complaint yet again, filing the
19  SAC on August 23, 2016, (D.E. 13).

20      **D.**    **Summary of the Second Amended Complaint's Allegations.**

21       At issue in the SAC is an allegedly deceptive scheme purportedly run by
22  Defendants whereby consumers are provided the "opportunity to obtain magazines
23  either free or at a discounted price for a specific term" but then "defendants actually
24  enroll consumers in a program that automatically renews the subscriptions from year-
25  to-year and results in annual charges to the consumer's" payment devices without
26  appropriate authorization.  (SAC ¶8.)

27       With respect to plaintiff Price, the SAC alleges that following an online
28  purchase, Price was directed to an online survey hosted by bizrate.com.  (*Id.*, at ¶28,

Ex. 17.)  After completing the survey, Price claims he was given the option to select up to five magazines and receive a full year of issues for $2.00 per magazine selection ("selection page").  (*Id.*)

On the selection page, above the "Continue" button that Price acknowledges he must have clicked to get to the payment page, was the disclosure: "All selections come with automatic renewal features.  Click 'Continue' for full details."  (*Id.*, at ¶30, Ex. 17.)  After clicking "Continue," Price was directed to a page to enter his delivery information ("delivery page").  (*Id.*, at ¶31, Ex. 17.)  After clicking "Continue" again, Price was directed to a page confirming the delivery information, and seeking payment information ("payment page").  (*Id.*, at ¶32, Ex. 17.)

Price further acknowledges the payment page contained numerous disclosures, as shown by this excerpt from Exhibit 17 to the SAC:



As shown above, the payment page informed Price that the $2.00 fee covered the subscription for the first year only.  Also on that page, immediately above the

1  "Complete" button, there was a section labeled "Important Reward Details."  The first

2  words of this paragraph are in bold and state "Automatic Renewal Authorization."

3  This paragraph disclosed (a) the magazines would automatically renew after the first

4  term and continue yearly, (b) the customer would receive a notice prior to renewal

5  specifying the price and billing terms, (c) the account used to pay for the first term of

6  issues would be charged for successive terms unless the customer canceled, and (d)

7  the toll-free number for cancellation.  Price's consent to the disclosures was requested

8  via the "Complete" button.

9        Despite Price's acknowledgement that these robust disclosures were made to

10  him, he claims the disclosures did not comply with the ARL because they were

11  purportedly too "small" and not presented in a manner capable of being retained by

12  him.  Yet, there are no facts in the SAC to support such assertions.  For instance, there

13  are no allegations in the SAC that the large underlined heading of "Important Reward

14  Details" and subsequent bold line of "Automatic Renewal Authorization" would not

15  clearly call attention to a reasonable consumer to the renewal disclosures that

16  followed—*which were also emphasized by the fact that they were on their own and*

17  *isolated away from any body text.*  Nor are there allegations in the SAC that a

18  reasonable consumer would be incapable of following the instructions on the payment

19  page and print a copy of the disclosures for his or her records.

20        Moreover, Price cannot avoid the fact—despite omitting such details from the

21  SAC—that he received notice prior to renewal specifying the price for the next billing

22  term and how to cancel the subscription without incurring that charge.  (Declaration of

23  E. Peacock ("EP Decl."), Ex. A ("[T]he magazine(s) listed below will continue for the

24  next term of issues using the account number you agreed to be billed for your

25  selection(s) and will be charged annually for Maxim at $37 for a total of 10 issues….

26  If you wish to discontinue, call 877-340-6783 by Feb 12 and no charge will appear.");

27  *id.*, Ex. B (same disclosure, but listing prices and renewal dates for Price's other

28  magazine subscriptions).)

Recognizing that the SAC lacks sufficient facts to assert a violation of the ARL related to the pre-purchase disclosures and acknowledgment, Price asserts an alternative theory that Defendants failed to provide him appropriate notice of a material change to his agreement. Yet, the SAC is silent as to what that material change was. As noted, Price acknowledges he was informed that he would receive a notice prior to renewal that would specify the price for the next term and billing terms. The SAC fails to allege that he did not receive such notice. Nor could it do so. Although Price ignores this fact in the SAC, Price was provided such notice before any renewal of his subscriptions. (EP Decl., Exs. A–B.)

Without providing any factual basis for her claim, plaintiff Edgemon asserts claims identical to Price based on an unsupported assertion that the disclosures she was presented when acquiring her subscriptions were similar to the disclosures Price received. (SAC ¶35, Ex. 17.) Like with Price, Edgemon received notice of the upcoming subscription renewal before it occurred. (EP Decl., Ex. C.)

### E.    Class Definition and Relief Sought.

Plaintiffs seek to represent a class consisting of "[a]ll individuals in California who, within the applicable statute of limitations . . . , were enrolled by defendants in an automatic renewal program or continuous service program."[1]    (SAC ¶39.) Plaintiffs seek the following relief: restitution, injunctive relief, attorneys' fees, compensatory damages, punitive damages, and costs of suit.

## III.   LEGAL STANDARDS.

### A.    Standards on a Motion to Dismiss under FRCP 12(b)(1) and (6).

Rule 12(b)(6) requires dismissal when a plaintiff fails to present a cognizable legal theory or to allege sufficient facts supporting a cognizable legal theory. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). While a court resolving a motion to

---

[1] The class definition is overbroad and, if Plaintiffs keep this definition at the certification stage, uncertifiable. *Sandoval v. Pharmacare US, Inc.*, 2016 WL 3554919, at*7–8 (S.D. Cal. June 10, 2016) (denying certification where class definition included persons with no injury, including those who received refunds).

1   dismiss under Rule 12(b)(6) must accept as true all factual allegations in the SAC, it
2   need not accept "labels and conclusions" or "a formulaic recitation of the elements of
3   a cause of action". *Bell Atl. v. Twombly*, 550 U.S. 544, 555 (2007).

4        After accepting the well-pled allegations, a court determines whether a
5   complaint alleges a "plausible" claim to relief. *Ashcroft v. Iqbal,* 129 S.Ct. 1937,
6   1949 (2009). A claim is plausible "when the plaintiff pleads factual content that
7   allows the court to draw the reasonable inference that the defendant is liable for the
8   misconduct alleged." *Id.* This standard "asks for more than a sheer possibility that a
9   defendant has acted unlawfully." *Id.* "Where a complaint pleads facts that are
10  'merely consistent with' a defendant's liability, it 'stops short of the line between
11  possibility and plausibility of entitlement to relief.'" *Id.* (quotation omitted).[2]

12       Under Rule 12(b)(1) a party may move to dismiss a claim for injunctive relief
13  based on the court's lack of subject matter jurisdiction. *See In re Intel Laptop Battery*
14  *Litig.*, 2011 WL 7290487 (N.D. Cal. Apr. 7, 2011).

15       **B.    Elements of Plaintiffs' Causes of Action.**

16       Plaintiffs allege five causes of action, all predicated on Defendants' purported
17  violation of the ARL.  (SAC ¶8.)  The causes of action raise three statutory-based
18  claims under the FAL, UCL, and CLRA, and two common law claims for conversion
19  and unjust enrichment.  The elements of each are as follows:

20       ***False Advertising Law.***   Plaintiffs' FAL claim is entirely premised on
21  purported ARL violations.  In addition to pleading a violation of the FAL, a plaintiff
22  must allege reliance on an alleged material misrepresentation and economic injury.
23  Cal. Bus. & Prof. Code § 17535; *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 326–27
24  (2011); *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009).

25       ***Unfair Competition Law.***  The UCL includes three separate prongs relating to
26  claims for "unfair competition"—(1) unlawful, (2) fraudulent, and (3) unfair business

27  _____
    [2] Paragraph 8 of the SAC confirms Plaintiffs' claims are subject to Rule 9(b) since the
28  claims "sound in fraud."  *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1125 (9th Cir.
    2009).  As discussed, the SAC fails to satisfy even the lower Rule 8 standard.

acts or practices.  Cal. Bus. & Prof. Code § 17200.    To plead a violation of the "unlawful" prong of the UCL, a plaintiff must allege that the challenged practice violates another law.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  Here, Plaintiffs appear to base their claim under the unlawful prong on California's ARL and the CLRA.  To plead a violation of the "fraudulent" prong of the UCL, a plaintiff must plead facts that the defendant made a material representation that would mislead an ordinary consumer acting reasonably under the circumstances. *See Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 504 (2003).  Although Plaintiffs purport to bring a claim under the "fraudulent" prong, (SAC ¶75), they make no allegations outside of those related to the purported ARL violations.  And, where (as here) plaintiffs base their claim under the "unfair" prong on the same misrepresentations at issue in claims under the FAL and CLRA, the claim's validity rises and falls with the other claims.  *See Sperling v. DSW Inc.*, 2016 WL 354319, at *5 (C.D. Cal. Jan. 28, 2016).

In addition to pleading a violation of the UCL under at least one prong, to state a claim a plaintiff must allege reliance on the alleged misrepresentation and economic injury.  Cal. Bus. & Prof. Code § 17204; *Kwikset,* 51 Cal. 4th at 326–27; *Tobacco II*, 46 Cal. 4th at 326.

***Consumers Legal Remedies Act.***   The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale . . . of goods or services to any consumer."  Cal. Civ. Code § 1770(a).  It permits a "consumer who suffers any damage as a result" of a CLRA violation to file suit.  *Id.* § 1780(a).

***Conversion***.  A plaintiff must allege "[1] ownership or right to possession of the property at the time of the conversion; [2] the defendant's conversion by a wrongful act or disposition of property rights; and [3] damages."  *Williamson v. Reinalt-Thomas Corp.*, 2012 WL 1438812, at *4 (N.D. Cal. Apr. 25, 2012) (citation omitted).  "[T]he general rule in California [is] that the object of a conversion claim cannot be

money." *Id.* at *5. There are limited exceptions to this rule, which require, *inter alia*, a "special relationship between the parties…." *Id.* at *4.

**Unjust Enrichment.** In California there is not a standalone cause of action for "unjust enrichment." *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1370 (2010). Plaintiffs' unjust enrichment claim is thus derivative of the other causes of action. *Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 989 (N.D. Cal. 2009) ("[Unjust enrichment] claim will depend upon the viability of the Plaintiffs' other claims").

## IV. THE COMPLAINT SHOULD BE DISMISSED.

This Court should dismiss the SAC—with prejudice—because all of Plaintiffs' claims suffer from a lack of well-pled facts, are premised on untenable legal theories, and are otherwise not properly before this Court.

### A. Plaintiffs' Statutory-Based Claims (Counts 1, 2, & 4) Fail Because Plaintiffs Do Not Adequately Plead Standing.

This court need not look to the purported merits of Plaintiffs' FAL, CLRA and UCL claims because Plaintiffs fail to allege facts establishing standing to pursue them. *Hernandez v. Atl. Fin. Co.*, 105 Cal. App. 3d 65, 71 (1980).

To have standing under the FAL, UCL, and CLRA, a plaintiff must plead facts establishing injury in fact and, where (as here) the plaintiffs base their claims on allegedly misleading conduct, reliance. Cal. Bus. & Prof. Code § 17535; Cal. Bus. & Prof. Code § 17204; Cal. Civ. Code § 1780(a); *Durell*, 183 Cal. App. 4th at 1367 (finding plaintiff's CLRA claim failed because he did not allege he relied on representation by defendant); *Kwikset*, 51 Cal. 4th at 322; *Meyer v. Sprint Spectrum L.P.,* 45 Cal. 4th 634, 641–42 (2009). Plaintiffs nevertheless fail to plead facts sufficiently tying their alleged harm to Defendants' purported violation of the ARL.

#### 1. Plaintiffs Have Not Pled Injury Caused by Defendants.

Plaintiffs cannot use a purported statutory violation as their only basis for injury because it would improperly meld the violation and injury into one. *Boorstein v. CBS Interactive, Inc.*, 222 Cal. App. 4th 456, 473–74 (2013); *Boorstein v. Men's Journal.*

*LLC,* 2012 WL 2152815, at \*3 (C.D. Cal. June 14, 2012).  Thus, to establish standing, Plaintiffs must allege facts to show how Defendants' purported violations of the ARL caused Plaintiffs harm.

Plaintiffs claim their credit cards were "charged" "without [] authorization". (SAC ¶¶29, 35.)  But the only facts Plaintiffs offer to support their conclusion regarding "authorization" suggest the exact opposite.  For example, Plaintiffs admit that the magazine selection page disclosed that "[a]ll selections come with automatic renewal features." (SAC ¶30.)  Likewise, Plaintiffs admit that Defendants disclosed the automatic renewal offer terms on the payment page, including the length of the term ("After the first term, all selections will continue"), the cancellation policy ("you authorize the account you provided to be charged . . . unless you choose to cancel: 1-800-429-2550"), and that the rate for successive terms would be included on a reminder notice ("Each year, you'll receive a reminder notice specifying price . . . for the next term of issues").  (SAC ¶32.)

Plaintiffs do not allege that the display of the automatic renewal offer terms was broken on the payment page they reviewed.  Neither do Plaintiffs allege that this disclosure was illegible.  Further, they do not allege that they did not understand the automatic renewal offer terms or that they did not agree to them by taking the affirmative action to click the "complete" button.  (*Id.*)  Rather, contrary to the requirements of *CBS Interactive*, Plaintiffs merely conclude that the offer terms "are a legal nullity" because Defendants allegedly violated the ARL.  (SAC ¶33 (reciting verbatim the statutory requirements of the ARL).)

In addition to these defects in the SAC, Plaintiffs ignore facts subject to judicial notice that undermine their conclusory allegations of harm.  Paragraph 32 and Exhibit 17 of the SAC reference a communication that is sent before a customer's subscription renews.  This communication describes the upcoming charges a customer may incur and how to avoid them.  (EP Decl., Exs. A–C.)  There are no allegations in the SAC (nor could there be) that Plaintiffs did not receive this communication.  Thus, any

1    claim that Plaintiffs have standing because they were subject to an unexpected cost is

2    undermined by the notice.  (*Id*.)  For these reasons, Plaintiffs' conclusory assertion

3    that "[u]nbeknownst" to them, they were enrolled in "a program under which the

4    'subscriptions' would 'automatically renew' each year, at a much higher price," (SAC

5    ¶¶29, 35) is a red-herring.

6         Lastly, the allegation that Plaintiffs' credit cards were charged is insufficient to

7    allege harm absent an assertion that they paid such charge.  (SAC ¶¶29, 35.)  Unlike

8    paying with cash, a charge on a credit card is merely an obligation to pay in the future.

9    That obligation, however, can be discharged without costing the credit card holder

10   money—*e.g.* a refund to the cardholder.  Thus, to plead sufficient facts regarding an

11   injury, the SAC cannot merely stop at an allegation that a charge was placed on

12   Plaintiffs' credit cards.  *See Amirhamzeh v. Chase Bank USA, N.A.,* 2014 WL 641705,

13   at *7 (C.D. Cal. Feb. 7, 2014) (dismissing consumer claims where plaintiff received

14   pre-litigation full refund of credit card charge).

15        Because Plaintiffs fail to show injury or damage caused by Defendants'

16   conduct, they do not have standing and the SAC must be dismissed with prejudice.

17                  **2.    Plaintiffs Have Not Pled Any Facts Showing Reliance.**

18        Where plaintiffs base their claims on allegedly misleading conduct (as here),

19   reliance must be pled separately from the alleged statutory violation.  *Pratt v. Whole*

20   *Foods Mkt. Cal., Inc.*, 2014 WL 1324288, *8 (N.D. Cal. Mar. 31, 2014) ("Plaintiff

21   cannot circumvent the reliance requirement by simply pointing to a regulation or code

22   provision that was violated by the alleged label misrepresentation, summarily

23   claiming that the product is illegal to sell and therefore negating the need to plead

24   reliance.").  "Reliance is established by pleading that 'the plaintiff in all reasonable

25   probability would not have engaged in the injury-producing conduct' but for

26   defendants' misrepresentations or omissions."  *McMillan v. Lowe's Home Ctrs., LLC*,

27   2016 WL 2346941, at *7 (E.D. Cal. May 4, 2016) (quoting *Tobacco II*, 46 Cal. 4th at

28   326).

Here, Plaintiffs' conclusory attempts to plead reliance fail. Plaintiffs simply assert that had they "known that defendants were going to enroll [them] in an automatic subscription program, [they] would not have ordered any magazines." (SAC ¶¶34, 36.) *McMillan*, 2016 WL 2346941, at *7. Yet, Plaintiffs fail to allege any factual connection between their purported lack of knowledge and Defendants' purported misconduct. The SAC does not allege any facts indicating that Plaintiffs were precluded from reading the disclosures due to Defendants' conduct. *See Cafferty Clobes Meriwether & Sprengel, LLP v. XO Commc'ns Servs., Inc*., 2016 U.S. Dist. LEXIS 72692, at *7 (N.D. Ill. June 3, 2016) (dismissing breach of contract claim where complaint "does not say that [Plaintiffs] took, failed to take or abstained from taking any action because [they] did not receive an adequate … Notice…." ); *see also Brown v. Wells Fargo Bank, NA*, 168 Cal. App. 4th 938, 959 (2008) ("Generally, it is *not reasonable* to fail to read a contract…. Reasonable diligence requires a party to read a contract before signing it." (internal citations omitted)); *accord Hawkins v. Hawkins*, 50 Cal. 558 (1875); *Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.,* 89 Cal. App. 4th 1042, 1049 (2001). Nor do they allege there were problems with their subscriptions or that they were dissatisfied with them. Thus, there are not enough facts in the SAC to push Plaintiff's conclusory allegations of reliance from possible to the plausible.

Quite simply, Plaintiffs make no allegations that tie any purported violation of the ARL to their decision to subscribe to their selected magazines. *See Hager v. Vertrue, Inc.*, 2011 WL 4501046, at *5-6 (D. Mass. Sept. 28, 2011) ("Having failed to read the materials the defendants provided (even fairly casually), Hager cannot now show the necessary connection between the allegedly deceptive materials and her mistaken enrollment such that the defendants would be responsible for the asserted harm."). Based on the allegations in the SAC it is equally possible that Plaintiffs' purported harm was due to their own conduct (e.g., choosing to not read the relevant communications) and not Defendants' conduct. Thus, separate and apart from failing

to allege any injury, Plaintiffs also fail to allege reliance on any purported ARL violation. *See Baxter v. Intelius, Inc.*, 2010 WL 3791487, at \*5 (C.D. Cal. Sept. 16, 2010) ("The fact that Plaintiffs cannot find a basis for actual reliance means that the UCL and FAL claims must fail.").

### B.   Plaintiffs Have Not Alleged Sufficient Facts of a Purported Violation of the ARL, Meaning All of Their Causes of Action Fail.

In addition to inadequately pleading standing for statutory violations, each and every claim alleged independently fails because Plaintiffs do not plead facts supporting a violation of the ARL—the predicate statute for each cause of action.

#### 1.   The Allegations Do Not Plead a Violation of the ARL.

Plaintiffs' allegations are nothing more than a regurgitation of the requirements set forth in the ARL.  Missing are facts that would undermine the conclusion that the disclosures are fully compliant with the law since they are formatted to clearly call attention to themselves.  Thus, the SAC is inadequate to support a plausible inference that Defendants violated the ARL.

##### a.   Plaintiff Edgemon Failed to Plead Facts Regarding Defendants' Purportedly Faulty Disclosures.

As it pertains to Plaintiff Edgemon, the SAC lacks allegations regarding the form and content of the purportedly faulty disclosures underlying her claims.  Although she alleges "on information and belief" that the disclosures represented in the SAC's attached exhibit were "similar in form and content" to the disclosures she saw, she provides no facts to support such assertion.  (SAC ¶35.)  That is improper. *See Simonyan v. Ally Fin., Inc.,* 2013 WL 45453, at \*2 (C.D. Cal. Jan. 3, 2013) (allegations based on "information and belief" containing nothing more than "rote recitation" of a claim's elements is insufficient).

##### b.   Plaintiffs Failed to Allege Facts Supporting Their Assertion that the Automatic Renewal Offer Terms Were Not Clearly and Conspicuously Disclosed.

Plaintiffs do not dispute that all the required information was disclosed.  Nor

1  could they—the disclosures meet each and every requirement of the ARL: (1) that the
2  subscription will continue until the consumer cancels, (2) the cancellation policy, and
3  (3) that the consumer's account will be charged automatically for successive terms.
4  *Compare* Cal. Bus. & Prof. Code § 17601(b), *with* (SAC ¶¶30–32, Ex. 17 (disclosing
5  that "[a]fter the first term, all selections will continue," that "[e]ach year, you'll
6  receive a reminder notice specifying price . . . and billing terms for the next term of
7  issues," and that "you authorize the account you provide to be charged the rate on the
8  notice for the next term of issues unless you choose to cancel: 1-800-429-2550.").)
9  Likewise, Plaintiffs do not appear to be seriously arguing that Defendants violated the
10 ARL due to use of implied consent as opposed to affirmative consent, Cal. Bus. &
11 Prof. Code § 17602(a)(2), or that the request for affirmative consent (the "Complete"
12 button) was not within visual proximity of the renewal disclosures, *id.* at §
13 17602(a)(1).

14      Instead, their dispute appears to focus on the formatting of the disclosures,
15 which they describe as "small." (SAC ¶32.) With respect to the subpart of the ARL
16 governing formatting, the statute states that the disclosures must be "clear and
17 conspicuous," which is defined as "[1] in larger type than the surrounding text, <u>or</u>
18 [2] in contrasting type, font, or color to the surrounding text of the same size, <u>or</u> [3] set
19 off from the surrounding text of the same size by symbols or other marks, in a manner
20 that clearly calls attention to the language…." *Id.* §§ 17601(c), 17602(a)(1) (emphasis
21 added). Because the ARL provides several methods for compliance with the clear and
22 conspicuous provision, Plaintiffs must do more than make a conclusory allegation that
23 the disclosures were "small." They did not.[3]

24      Here, the automatic renewal offer terms are not contained on a separate
25

---

26  [3] When construing statutes, undefined words are given their usual and ordinary
    meaning. *Kobzoff v. L.A. Cty. Harbor/UCLA Med. Ctr.*, 19 Cal. 4th 851, 860-61
27  (1998). The usual and ordinary meaning of the word "text" means "the main body of
    matter in a manuscript, book, newspaper, etc., as distinguished from notes,
    appendixes, headings, illustrations, etc." *Text*, RANDOM HOUSE WEBSTER'S
28  UNABRIDGED DICTIONARY, 1963 (2d ed. 2001).

1   webpage accessible via hyperlink or buried in prolix.  The terms stand alone on the

2   page with <u>no</u> surrounding body text.   A reasonable consumer would see the

3   disclosures as separate and apart from the rest of the webpage.  Although the ARL

4   does not expressly address the precise scenario here—where the disclosures have no

5   surrounding text—the large, bolded, and underlined heading "**<u>Important Reward</u>**

6   **<u>Details</u>**" and subsequent bold line of "**Automatic Renewal Authorization**" are

7   formatted to clearly call a reasonable consumer's attention to the following

8   disclosures.  There are no facts pled in the SAC that undermines the conclusion that

9   the formatting is sufficient under the ARL.[4]

10        **c.   Plaintiffs Failed to Plead Facts Supporting Their Claim**
11             **that They Did Not Receive the Required**
             **Acknowledgement.**

12        Under the ARL, all a company is required to do vis-à-vis the acknowledgement

13   requirement contained in § 17602(a)(3) is provide "an acknowledgment that includes

14   the automatic renewal or continuous service offer terms, cancellation policy, and

15   information regarding how to cancel in a manner that is capable of being retained by

16   the consumer."  This acknowledgement can be provided at any time.  Cal. Bus. Prof.

17   Code § 17602(d)(1).

18        Here, the payment page directed Plaintiffs to print a copy for their records.

19   (SAC Ex. 17.)   There are no factual allegations in the SAC that either they or a

20   reasonable consumer were or was incapable of following that instruction.  Further, the

21   payment page notifies customers that they will be sent notices indicating when their

22   subscriptions would renew, the renewal price, and the option to cancel *prior to*

23   *renewal*—compliant notices that Plaintiffs do not (*and cannot*) deny receiving.  (*Id.*;

24   *see, e.g.*, EP Decl., Ex. A ("[T]he magazine(s) listed below will continue for the next

25   ────────────
    [4] Even if a defendant is found to not technically comply with the ARL, it can still
26   qualify for the affirmative defenses of "substantial compliance" and the "voluntary
    payment doctrine."  *See S. Pac. Trans. Co. v. St. Bd. of Equalization*, 175 Cal. App. 3d
27   438, 442 (1985) ("[T]echnical deviations are not to be given the stature of
    noncompliance."); *Am. Oil Serv. v. Hope Oil Co.*, 194 Cal. App. 2d 581, 586 (1961)
28   ("a payment voluntarily made with knowledge of the facts affords no ground for an
    action to recover it back.").  Such defenses, however, are not at-issue in this motion.

term of issues using the account number you agreed to be billed for your selection(s) and will be charged annually for Maxim at $37 for a total of 10 issues…. If you wish to discontinue, call 877-340-6783 by Feb 12 and no charge will appear.").) The SAC thus lacks well pled facts to support Plaintiffs assertion they did not receive an ARL-compliant acknowledgement. Instead, the SAC and facts subject to judicial notice show they received at least two acknowledgements.

### d. Plaintiffs' Alternative Theory Regarding a Purported Material Change Also Fails.

As an alternative theory of liability, Plaintiffs claim Defendants violated the ARL by "having failed to provide plaintiffs and Class members with a clear and conspicuous notice of a material change in price and information regarding how to cancel." (SAC ¶57.) This theory, like Plaintiffs' theory in-principle, fails.

To support this theory, Plaintiffs harp on their claim that they were charged more for the subsequent subscription terms. (SAC ¶¶29, 35.) However, the fact the price was subject to change was disclosed to Plaintiffs before they affirmatively agreed to the subscriptions. (SAC ¶32 ("Each year, you'll receive a reminder notice specifying price plus . . . for the next term of issues and you authorize the account you provide to be charged the rate on the notice for the next term of issues unless you choose to cancel.").) And Plaintiffs do not dispute that they also received the notification of the purported price change a second time prior to the subscription renewal informing Plaintiffs of the cancellation procedure and the price they would be charged if they did not cancel by the date specified. Nor can they make such an assertion. (EP Decl., Exs. A–C.)

### e. The SAC Negates Plaintiffs' Allegations of Scienter.

Under the ARL, a defendant is provided protection from liability unless it intentionally failed to inform persons that their subscription renewed. *See* Cal. Bus. & Prof. Code § 17604(b). As pled, Plaintiffs were informed, *inter alia*: (a) "[a]fter the first term, all selections will continue," (b) "[e]ach year, you'll receive a reminder

notice specifying price . . . and billing terms for the next term of issues," and (c) "you authorize the account you provide to be charged the rate on the notice for the next term of issues unless you choose to cancel: 1-800-429-2550." (SAC ¶32.) These notices were presented in a stand-alone manner without surrounding text and with a large heading informing Plaintiffs that the disclosures below are "Important." Plaintiffs received these disclosures again before their subscriptions renewed. Thus, the SAC's allegations negate and preclude Plaintiffs' ARL claims. *See Holomaxx v. Microsoft Corp.*, 783 F. Supp. 2d 1097, 1105 (N.D. Cal. 2011); *e360 Insight, LLC v. Comcast Corp.,* 546 F. Supp. 2d 605, 609 (N.D. Ill. 2008).

**2.    Plaintiffs' Derivative Claims Are Insufficiently Pled In Light of Their Failure to Plead an ARL Violation.**

Absent a violation of the ARL, all of Plaintiffs' claims fail. This is because the purported ARL violations are the only support for the SAC. Paragraph 33 of the SAC, which provides the legal theory underlying all of Plaintiffs' claims, only references purported violations of the ARL's requirements. Further, each paragraph of the FAL claim (Count 1) cites the provisions of the ARL and no other statute or legal principle. Plaintiffs' CLRA claim (Count 2) merely parrots the CLRA's provisions and contains no independent explanation for why Defendants should be found liable beyond the earlier Paragraph 33. Plaintiffs' conversion (Count 3) and Unjust Enrichment claims (Count 5) are expressly premised on Defendants purported violation of "California law." And Plaintiffs' UCL claim (Count 4) is only supported by cross-referencing the purported ARL and CLRA violations, and Plaintiffs' conversion claim. (SAC ¶75.) Accordingly, all claims are predicted on Plaintiffs' defective assertion of an ARL violation.

Because the assertion that Defendants violated the ARL lacks sufficient factual support, all of Plaintiffs' claims must be dismissed. *See Stiles v. Wells Fargo Bank*, 2014 WL 7146950, at *8 (N.D. Cal. Dec. 15, 2014); *Otto v. Abbott Labs., Inc.*, 2013 U.S. Dist. LEXIS 53287, *5–6, 26 (C.D. Cal. Mar. 15, 2013).

Additionally, any assertion the UCL or CLRA claims can survive despite Plaintiffs failing to plead an ARL violation cannot be supported.  Claims under California's UCL and CRLA are governed by "reasonable consumer" test, which requires a showing that "members of the public are likely to be deceived" by the subject representation.  *Otto*, 2013 U.S. Dist. LEXIS 53287, at *8–9 (quotation omitted).  Under the reasonable consumer test, disclosures like those here provide sufficient notice of recurring charges.  *See Berry v. Webloyalty.com, Inc.*, No. 2011 WL 1375665, at *4–7 (S.D. Cal. Apr. 11, 2011), *vacated and remanded*, 517 F. App'x 581 (9th Cir. 2013); *Hook v. Intelius, Inc.*, 2011 WL 1196305, at *9–10 (M.D. Ga. Mar. 28, 2011); *Baxter v. Intelius, Inc.*, 2010 WL 3791487, at *4 (C.D. Cal. Sept. 16, 2010); *In re Vistaprint Corp. Mktg. & Sales Prac. Litig.*, 2009 WL 2884727, at *11–12 (S.D. Tex. Aug. 31, 2009), *aff'd sub nom. Bott v. Vistaprint USA Inc.*, 392 F. App'x 327 (5th Cir. 2010)); *Hager*, 2011 WL 4501046, at *5–6.

### C.   Plaintiffs' CLRA, Conversion, and Unjust Enrichment Claims (Counts 2, 3, & 5) Must Be Dismissed for Independent Reasons.

Even if Plaintiffs' adequately pled a violation of the ARL (they do not), Plaintiffs' CLRA, conversion and unjust enrichment claims still fail.

### 1.   Plaintiffs Fail to Plead a Violation of the CLRA (Count 2).

Plaintiffs base their second cause of action—alleged violations of the CLRA—on California Civil Code Section 1770, subsections (a)(5), (a)(9), (a)(13), and (a)(17). (SAC ¶64.)  However, Plaintiffs fail to allege any facts that would suggest a violation of any of the listed subsections.

### a.   Subpart (a)(5): No Facts About Sponsorship, etc.

Section 1770(a)(5) makes it unlawful to "[r]epresent[] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."  Yet, nowhere does the SAC allege Defendants made any representations—false or otherwise—regarding sponsorship,

approval, ingredients, uses, or benefits.  Further, the SAC does not include any allegations that Defendants made inaccurate representations regarding characteristics (*i.e.* contents of the magazines) or quantity (*i.e.* magazines per term).  In light of the complete absence of allegations on point, this claim should be dismissed.  *See Fraker v. Bayer Corp.*, 2009 WL 5865687, at *9 (E.D. Cal. Oct. 6, 2009) (dismissing plaintiff's claim under section 1770(a)(5) because "Defendants advertising makes no claim to sponsorship or approval and the evidence presented in the FAC, even if admissible, does not go to show that any of Plaintiffs claims with regard to characteristics, ingredients, uses, benefits or quantities are false").

### b.    Subpart (a)(9): No Facts About Bait-and-Switch.

Section 1770(a)(9) makes it unlawful to "[a]dvertis[e] good or services with intent not to sell them as advertised."  Again, Plaintiffs' claim under this provision suffers from a complete lack of facts.  There is no allegation that Defendants used bait and switch tactics—*i.e.* there is no allegation that Plaintiffs did not receive the magazines they selected.  Nor is there an allegation that Defendants expressly advertised a lower price for the subsequent term that was not utilized.  Indeed, Exhibit 17 references that customers will be informed of the price for the subsequent term in a notice.  Yet, there is no allegation in the SAC that such notice was not sent.  This claim should be dismissed.  *See Kelly v. BP W. Coast Prods. LLC*, 2014 WL 7409220, at *8 (E.D. Cal. Dec. 30, 2014) (dismissing claim under subpart (a)(9) when there were no allegations of bait and switch tactics).

### c.    Subpart (a)(13): No Facts About Price Reductions.

Section 1770(a)(13) makes it unlawful to "[m]ak[e] false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions."  This claim is puzzling given the SAC complains about "a price increase…." (SAC ¶¶29, 35.)  This claim should be dismissed.

### d.    Subpart (a)(17): No Facts About Contingencies.

Section 1770(a)(17) makes it unlawful to "[r]epresent[] that the consumer will

1    receive a rebate, discount, or other economic benefit, if the earning of the benefit is

2    contingent on an event to occur subsequent to the consummation of the transaction."

3    The legislative history addressing this subsection explains that it was designed to

4    "prevent a situation where the consumer would 'be required to buy an additional

5    product before he could receive the advertised discount, or that he buy a more

6    expensive and high quality product than the one advertised.'" *Kramer v. Intuit Inc.*,

7    121 Cal. App. 4th 574, 580 (2004), *as modified on denial of reh'g* (Aug. 11, 2004)

8    (quotation omitted).

9         Like the other claims under Section 1770, the SAC fails to include a single fact

10   that supports this claim.  There is no allegation of any contingent future event—*i.e.* no

11   allegation that Plaintiffs were required to buy an additional product before receiving

12   the advertising discount.  Rather, the promotional offer followed an online purchase,

13   and applied to the *first* term of issues (not subsequent terms).  Moreover, Plaintiffs

14   could cancel successive terms without forfeiting the discount on the earlier issues.

15   Thus, no further purchase was even contemplated, much less required.  Accordingly,

16   this claim should be dismissed.

17                    **2.    Plaintiffs Fail to Plead Conversion (Count 3).**

18        Plaintiffs' third cause of action is for alleged conversion.  "Conversion is the

19   wrongful exercise of dominion over the property of another."  *Oakdale Vill. Grp. v.

20   Fong*, 43 Cal. App. 4th 539, 543–44 (1996), *as modified on denial of reh'g* (Apr. 10,

21   1996).  To state a claim for conversion, a plaintiff must allege "ownership or right to

22   possession of the property at the time of the conversion; the defendant's conversion by

23   a wrongful act or disposition of property rights; and damages."  *Id.*  In California,

24   "[m]oney cannot be the subject of an action for conversion unless a specific sum

25   capable of identification is involved."  *Williamson*, 2012 WL 1438812, at *4.

26   "California cases permitting an action for conversion of money typically involve those

27   who have misappropriated, commingled, or misapplied specific funds held for the

28   benefit of others."  *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil &*

*Shapiro, LLP*, 150 Cal. App. 4th 384, 396 (2007).  "Thus, a claim for conversion may be stated when there is a special relationship between the parties where the defendant has a duty to retain or apply funds on the plaintiff's behalf." *Williamson*, 2012 WL 1438812, at *4.

Plaintiffs' claim for conversion fails.  Because the subject of their claim for conversion is money—*i.e.* purported "charges made by defendants to plaintiffs' and Class members' credit cards, debit cards, and/or third party payment accounts"—Plaintiffs must plead facts establishing a special relationship between the parties. They fail to do so.  (SAC ¶¶69–70 (alleging only that the amount of money is "capable of identification").)  Absent allegations of a special relationship, Plaintiffs' claim for conversion must be dismissed.

### 3.      Unjust Enrichment (Count 5) Cannot Survive Alone.

"Unjust enrichment is not a cause of action, [ ] or even a remedy, but rather a general principle, underlying various legal doctrines and remedies." *McBride v. Boughton*, 123 Cal. App. 4th 379, 387 (2004) (internal quotation marks and citation omitted).  Where a plaintiff's underlying causes of action fail, a "claim for unjust enrichment cannot stand alone as an independent claim for relief." *Hovsepian v. Apple, Inc.*, 2009 WL 5069144, at *5 (N.D. Cal. Dec. 17, 2009) (citation omitted).

As shown, Plaintiffs' claims for purported violations of the FAL, UCL, CLRA fail due many reasons, including due to the lack of facts regarding the issue of standing.  Further, the conversion claim is legally deficient.  With no successful predicate cause of action, Plaintiffs' claim for unjust enrichment likewise fails.

### D.      Time Is an Improper Party and Should Be Dismissed.

The SAC improperly names Time as a defendant based on the purported acts of Synapse.  This goes against the "fundamental principle of corporate law that a parent corporation and its subsidiary are treated as separate legal entities." *Soriano v. Countrywide Home Loans, Inc.*, 2011 WL 1362077, at *9 (N.D. Cal. Apr. 11, 2011); *see also Pauley Petroleum, Inc. v. Cont'l Oil Co.*, 231 A.2d 450, 452–53 (1967), *aff'd,*

239 A.2d 629 (1968).  To hold a parent company liable for the acts of its subsidiary, the plaintiff must show an exception applies.  *Soriano*, 2011 WL 1362077, at *9; *see In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, *5–6 (E.D.N.Y. Aug. 29, 2013) (dismissing PepsiCo from action where there were no facts regarding its involvement in the subsidiary's conduct at-issue).

Plaintiffs appear to invoke an agency argument to support their allegations against Time.  (SAC ¶5.)[5]  Under an agency theory, a parent may be held liable where the factual allegations show the "subsidiary acts as the agent of the parent."  *Soriano*, 2011 WL 1362077, at *9 (citation omitted); *see Pac. Can Co. v. Hewes*, 95 F.2d 42, 46 (9th Cir. 1938).  Plaintiffs also try to support their allegations against Time with an alter-ego theory, (SAC ¶5), *i.e.*, a claim that "a parent corporation may be liable for the acts of its subsidiary if 'an abuse of the corporate privilege justifies holding the equitable ownership of a corporation liable for the actions of the corporation'".  *Soriano*, 2011 WL 1362077, at *9 (quotation omitted).   Plaintiffs fail to plead sufficient facts under either theory.

### 1.    Plaintiffs Do Not Plead That Synapse Is an Agent of Time.

"The burden of proving an agency relationship rests on the party asserting it." *Expeditors Int'l of Wash., Inc. v. Expeditors (Japan), Ltd.*, 224 F.R.D. 661, 667 (W.D. Wash. 2004).  "To establish agency requires a showing that the parent so controls the subsidiary that it becomes merely the instrumentality of the parent."  *Soriano*, 2011 WL 1362077, at *9–10 ("Plaintiff must establish '[d]ominion ... so complete [and] interference so obtrusive' that the parent is a principal and the subsidiary a mere agent." (quoting *Pac. Can Co.*, 95 F.2d at 45–46)).

The SAC falls far short of meeting this standard.  In fact, Plaintiffs fail to allege *any* facts suggesting an agency relationship.  They merely assert that Synapse is a

---

[5] Given there are no facts to support Time's inclusion in the case, the Court need not go through a choice of law analysis between the forum state's law and the law of the state of incorporation (Delaware).  Regardless of which law applies, Plaintiffs have not pled sufficient facts to permit them to disregard corporate structure.

1   wholly-owned subsidiary of Time, and then conclude that "Time so controls and
2   conducts the affairs of Synapse so as to render Synapse a mere instrumentality,
3   agency, conduit, or adjunct of Time." (SAC ¶5.)  This is inadequate. *Expeditors*, 224
4   F.R.D. at 667.  "The fact that [Synapse] is a wholly-owned subsidiary of [Time],
5   alone, does not establish that an agency relationship exists…." *Id.*

6       Plaintiffs do not allege any facts indicating the Time controls the decision-
7   making of Synapse with respect to its automatic renewal offers.  Rather, Plaintiffs
8   simply stand on conclusory statements, for example, that Time has a "financial
9   interest in maximizing the number and duration of subscriptions." (SAC ¶15)  But
10  nowhere do Plaintiffs allege that, in light of Time's alleged financial interest, Time
11  directed Synapse to present automatic renewal offer terms in any specific manner, let
12  alone in a manner that would violate the ARL.

13      Moreover, Plaintiffs admit that "*Synapse* was an early advocate of the negative
14  option model" prior to any ownership interest by Time.  (SAC ¶¶11, 15 (emphasis
15  added).)  Accordingly, Plaintiffs' own allegations undermine any inference that Time
16  is responsible for the actions taken by Synapse with respect to presentation of
17  automatic renewal offer terms.

18      Thus, Time's purported liability cannot be predicated on an agency theory.

19          **2.   Plaintiffs Do Not Plead Time Is the Alter-Ego of Synapse.**

20      The "alter-ego" theory "requires a showing of more than just ... control of the
21  subsidiary by the parent." *Soriano*, 2011 WL 1362077, at *9 (internal quotations
22  omitted).  Rather, a plaintiff must plead facts indicating "a disregard of [the] corporate
23  form, *e.g.,* commingling of funds or disregard of legal formalities." *M/V Am. Queen*
24  *v. San Diego Marine Const. Corp.,* 708 F.2d 1483, 1489–90 (9th Cir. 1983).
25  Additionally, "in order to disregard the corporate entity, courts have generally held
26  that it is not enough that the company is controlled by, or a mere instrumentality or
27  conduit of, its shareholders, but it must also appear that to recognize their separate
28  entities would lead to an injustice." *Von Brimer v. Whirlpool Corp.*, 362 F. Supp.

1182, 1194 (N.D. Cal. 1973), *aff'd in part, rev'd in part*, 536 F.2d 838 (9th Cir. 1976); *see also M/V Am. Queen*, 708 F.2d at 1489–90 ("[I]t must appear that injustice will result from recognizing [the subsidiary] as a separate entity and that [the parent company] had a fraudulent intent or an intent to circumvent statutory or contractual obligations in its control of [the subsidiary].").[6]

Plaintiffs fail to meet this standard.  Lacking any factual support, Plaintiffs conclude that "there is such a unity of interest between [Defendants] that their separateness has ceased" and that "disregard of the corporate separateness of Synapse and SynapseConnect is necessary to avoid . . . an unjust result." (SAC ¶5.)  But Plaintiffs do not allege facts to support *how* Time has disregarded "corporate separateness" or *why* dismissing Time would produce "an unjust result."[7]

Moreover, Plaintiffs do not plead facts to suggest that inequity will result if Time is not a party to this action.  In fact, Plaintiffs acknowledge Synapse generates its own considerable revenues. (*Id.*at ¶18.) *Leek v. Cooper*, 194 Cal. App. 4th 399, 418 (2011) (dismissing claim based on alter-ego theory where "there is nothing to indicate that plaintiffs, if successful against the corporation, will not be able to collect on any judgment against the corporation").  Merely alleging that Synapse's operations result in "additional subscription revenue and additional advertising revenue for Time" (SAC ¶18) does not provide any basis for applying the alter-ego theory to hold Time liable for the acts of Synapse.  194 Cal. App. 4th at 417–18 (identifying factors

---

[6] Delaware's standard for alter-ego is substantially similar to that of California, but requires an additional element of fraud. *Mason v. Network of Wilmington, Inc.*, No. CIV.A. 19434-NC, 2005 WL 1653954, at *3 (Del. Ch. July 1, 2005).

[7] Plaintiffs' attempt to paint Synapse as a mere instrumentality that Time is using to escape the requirements of its settlement agreement with States is irrelevant. (*See id.* at ¶¶19–21, Ex. 10.)  First, Plaintiffs are not parties to that agreement, and therefore lack standing to enforce claims against Time for any purported violation of the same. (Ex. 10 at 98.)  Second, the SAC does not assert a cause of action for breach of the agreement.  Third, even if Plaintiffs had standing and brought a claim for breach of the agreement, they have not pled facts to suggest that the settlement agreement is still valid in light of California's enactment of the ARL.  (Ex. 10 at 99–100 (providing that State laws or regulations in conflict with the agreement will control; also providing for modification and termination of the agreement).)

1    courts consider when determining application of alter-ego theory, none of which are

2    parent companies financial interest in subsidiaries).

3         Plaintiffs assert nothing more than bare conclusions, and thus fail to adequately

4    allege Time should be liable under the alter-ego theory.  *See Mindlab Media, LLC v.*

5    *LWRC Int'Z LLC,* 2012 WL 386695, at *4 (C.D. Cal. Feb. 6, 2012) (no alter ego

6    liability where complaint contained only conclusory allegations).

7         Because Plaintiffs fail to allege any basis for holding Time liable for Synapse's

8    purported acts, Time should be dismissed with prejudice.

9         **E.    Plaintiffs Do Not Have Standing for Injunctive Relief.**

10        Plaintiffs seek injunctive relief for purported violations of the FAL, UCL, and

11   CLRA.  (SAC ¶¶59, 66, 80.)  "[I]t is not the presence or 'absence of a past injury' that

12   determines Article III standing to seek injunctive relief; it is the imminent 'prospect of

13   future injury.'"  *Ervine v. Desert View Reg'l Med. Ctr. Holdings, LLC*, 753 F.3d 862,

14   868 (9th Cir. 2014) (quotation omitted).

15        Plaintiffs do not (and cannot) allege facts to plausibly suggest their alleged

16   injury will occur again.  Rather, Plaintiffs' complaint is evidence that they are now

17   aware of the continuous nature of their prior subscriptions (which were terminated

18   before the lawsuit was filed).  Moreover, Plaintiffs do not allege that Defendants will

19   continue to charge their credit cards in the future.  Accordingly, Plaintiffs' request for

20   injunctive relief is improper and should be dismissed.

21   **V.    CONCLUSION.**

22        After three attempts, Plaintiffs are still unable to allege facts sufficient to state a

23   claim.   Defendants therefore request that the Court grant its motion to dismiss *without*

24   leave to amend.

25    Dated: September 23, 2016              COOLEY LLP

26                                          /s/ *Darcie A. Tilly (213715)*
                                           Attorneys for Defendants SYNAPSE
27                                         GROUP, INC., SYNAPSECONNECT,
                                           INC., and TIME INC.

28