UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON DALE PRICE AND CHERYL EDGEMON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SYNAPSE GROUP, INC., SYNAPSECONNECT, INC., TIME, INC., AND DOES 1-50 inclusive,<br><br>Defendants. | Case No.: 16CV1524-BAS(BLM)<br><br>**ORDER ON JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br><br>**[ECF No. 59]** |

Currently before the Court is the parties' Joint Motion for Determination of Discovery Dispute. ECF No. 59 ("Mot."). For the reasons set forth below, Plaintiffs' request to compel further response to Requests for Production of Documents Nos. 16, 17 and 21-23 is **GRANTED IN PART**. Plaintiffs' request to compel further response to Requests for Production of Documents No. 24 is **DENIED AS MOOT**. Defendants' request that Plaintiff's share in the cost of discovery is **DENIED**. Defendants' request to compel production of unredacted bank statements and credit card statements is **DENIED**.

## **BACKGROUND**

Plaintiffs filed a second amended class action complaint alleging false advertising, violation of the California Consumers Legal Remedies Act ("CLRA"), conversion, unfair

competition, and unjust enrichment on August 23, 2016. ECF No. 13 ("SAC"). Plaintiffs allege that Defendants "are engaged in an illegal automatic renewal scheme for magazine subscriptions." Id. at 3. Specifically, Plaintiffs allege that after presenting consumers with an opportunity for free or heavily discounted magazine subscriptions, Defendants misleadingly enroll customers in an automatic renewal program that renews the magazine subscriptions and results in a charge to "the consumer's credit card, debit card, or third party payment account without providing the requisite disclosures and without obtaining the requisite authorizations required by California law." Id.

On June 27, 2018, counsel for Plaintiffs, Mr. Zachariah Dostart, and counsel for Defendants, Mr. Michael Meuti, contacted the Court regarding the instant dispute. ECF No. 54. In response, the Court ordered the parties to file a Joint Motion for Determination of Discovery Dispute on or before July 30, 2018. Id. The parties timely filed the motion. See Mot.

On August 22, 2018, the parties filed a Joint Statement Regarding the instant motion "identif[ying] the issues that have been resolved and the remaining issues the parties believe require a decision by the Court." ECF No. 79 ("Supp. Jt. Stmt.").

## **LEGAL STANDARD – SCOPE OF DISCOVERY**

The scope of discovery under the Federal Rules of Civil Procedure is defined as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). District courts also have broad discretion to limit discovery to prevent its abuse. See Fed. R. Civ. P. 26(b)(2) (instructing that courts must limit discovery where the party seeking the discovery "has had ample opportunity to obtain the

information by discovery in the action" or where the proposed discovery is "unreasonably cumulative or duplicative," "obtain[able] from some other source that is more convenient, less burdensome, or less expensive," or where it "is outside the scope permitted by Rule 26(b)(1)").

A party may request the production of any document within the scope of Rule 26(b). Fed. R. Civ. P. 34(a). "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Id. at 34(b)(2)(B). The responding party is responsible for all items in "the responding party's possession, custody, or control." Id. at 34(a)(1). Actual possession, custody or control is not required. Rather, "[a] party may be ordered to produce a document in the possession of a non-party entity if that party has a legal right to obtain the document or has control over the entity who is in possession of the document." Soto v. City of Concord, 162 F.R.D. 603, 619 (N.D. Cal. 1995).

## **LEGAL STANDARD – CLASS ACTIONS**

Whether or not pre class certification discovery will be permitted is in the sound discretion of the trial court. Coleman v. Jenny Craig, Inc., 2013 WL 2896884, at *4 (S.D. Cal. June 12, 2013) (citing Kamm v. Cal. City Dev. Co., 509 F.2d 205 (9th Cir.1975)). In seeking discovery before class certification, Plaintiffs bear the burden of making a prima facie showing that the Fed. R. Civ. P. 23 requirements are satisfied or that discovery is likely to substantiate the class allegations (Mantolete Burden). Salgado v. O'Lakes, 2014 WL 7272784, at *4 (E.D. Cal. Dec. 18, 2014); see also Coleman, 2013 WL 2896884, at *4 (citing Mantolete v. Bolger, 767 F.2d 1416, 1424 (9th Cir.1985) ("Although in some cases a district court should allow discovery to aid the determination of whether a class action is maintainable, the plaintiff bears the burden of advancing a prima facie showing that the class action requirements of Fed. R. Civ. P. 23 are satisfied or that discovery is likely to produce substantiation of the class allegations. Absent such a showing, a trial court's refusal to allow class discovery is not an abuse of discretion.")). Fed. R. Civ. P 23(a) permits a class actions to proceed where

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class

Additionally, a class action only will be certified if

> (1) there is a risk of substantial prejudice from separate actions; or (2) declaratory or injunctive relief benefitting the class as a whole would be appropriate; or (3) "the questions of law and fact common to class members predominate over any questions affecting only individual members and ... a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Coleman, 2013 WL 2896884, at *4. "In determining whether to grant discovery the court must consider its need, the time required, and the probability of discovery resolving any factual issue necessary for the determination" of whether a class action is maintainable. Id. (citing Kamm, 509 F.2d at 210) (stating that "[t]he propriety of a class action cannot be determined in some cases without discovery, as, for example, where discovery is necessary to determine the existence of a class or set of subclasses. To deny discovery in a case of that nature would be an abuse of discretion. Where the necessary factual issues may be resolved without discovery, it is not required.").

## **DISCUSSION**

**A.    Requests for Production Nos. 16 & 17**

Plaintiffs seek an order from the Court compelling Defendants to further respond to Request for Production of Documents ("RFPs") Nos. 16 and 17. Mot. at 20-26. The requests seek the following:

Request for Production No. 16:

All documents, including but not limited to emails, correspondence, notes, and/or audio files, that constitute, memorialize, reflect, refer to, or relate to any assertion, complaint, or grievance made during the Class Period by a California Customer that he or she did not consent or agree to be enrolled in an Automatic Renewal or Continuous Service subscription. (Plaintiff is amenable to meeting and conferring

4

on ESI search terms, custodians, and time frame for ESI searches).

Request for Production No. 17:

All documents, including but not limited to emails, correspondence, notes, and/or audio files, that constitute, memorialize, reflect, refer to, or relate to any assertion, complaint, or grievance made during the Class Period by a California Customer that he or she did not consent for his or her credit card, debit card, or third party payment account to be charged for a renewal period. (Plaintiff is amenable to meeting and conferring on ESI search terms, custodians, and time frame for ESI searches).

Id. at 12, 16.[1] After asserting numerous objections to RFP No. 16, Defendants agreed to produce

recordings of any responsive IVR[2] calls it locates as relates to these four additional potential class representatives . . . .

correspondence from California consumers within the approximately 20 accessible boxes containing hard-copy correspondence with customers between May 17, 2012 and December 31, 2017 . . . .

---

[1] The "Definitions" section of the Requests for Production set forth the following defined terms:

"Automatic Renewal" means a plan or arrangement in which a magazine subscription is set to automatically renew at the end of a definite term for a subsequent term, unless the subscriber cancels before the renewal is to take effect.

"California Customer" means an individual who, at any time on or after May 17, 2012, was enrolled by or through Synapse in an Automatic Renewal or Continuous Service magazine subscription for which the mailing address is in the State of California. "Class Period" means the period May 17, 2012 to the present.

"Continuous Service" means a plan or arrangement in which a magazine subscription continues until cancelled by the subscriber.

Mot. at 12-13.

[2] IVR stands for Interactive Voice Response System. Mot. at 8.

> responsive consumer correspondence with the Better Business Bureau and state attorney generals from California consumers, with information identifying any consumer redacted . . . .
>
> relevant responsive emails through the process identified above and embodied in the Court-ordered ESI Stipulation. Any customer identifying information will be redacted.

Id. at 15-16. Defendants also asserted numerous objections to RFP No. 17 but then agreed to (1) "run a reasonable set of search terms on a reasonable list of custodians' documents" for emails once the parties agree on a reasonable set of search terms, (2) "produce recordings of any responsive IVR calls it locates as relates to these four additional potential class representatives," (3) "identify correspondence from California consumers within the approximately 20 accessible boxes containing hard-copy correspondence with customers between May 17, 2012, and May 17, 2016," (4) "produce responsive consumer correspondence with the Better Business Bureau and state attorney generals from California consumers, with information identifying any consumer redacted," and (5) "produce relevant responsive emails through the process identified above and embodied in the Court-ordered ESI Stipulation." Id. at 19-20.

Plaintiffs argue that Defendants' responses are insufficient and that they should be required to produce (1) responsive documents from all twenty-six boxes that Defendants have located as opposed to the twenty boxes suggested by Defendants, (2) responsive correspondence from May 12, 2012 to June 30, 2018 (as opposed to only December 31, 2017 as suggested by Defendants), (3) documents with unredacted customer identifying information, (4) documents received through intermediaries with Defendants' responses, and (5) a twenty-day sample of audio files from the class period without redaction. Id. at 20-25. Plaintiffs note that in accordance with the ESI Order entered on April 25, 2018 [see ECF No. 47], Defendants' compliance with the ESI protocol does not relieve Defendants from the requirement to produce "all known responsive documents" even if they are not a "hit" in an ESI search. Mot. at 25-26.

While Plaintiffs concede that their Automatic Renewal Law ("ARL") claims can be established without the requested discovery, Plaintiffs argue that the requested discovery is

relevant to their claims under the California consumer protection laws, specifically, the CLRA and UCL. Mot. at 21. Plaintiffs argue that under the CLRA and the unfair/fraudulent prongs of the UCL, they must show that "members of the public are likely to be deceived." Id. For purposes of class certification, Plaintiffs must also establish there are common issues that predominate and that class treatment is the best method for resolving the disputes. Id. at 21-22. RFP Nos. 16 and 17 seek consumer complaints, grievances, and discussions about consumers' consent to enrollment in an Automatic Renewal subscription and to having their credit or debit cards charged for a renewal period. Id. at 12, 16. Plaintiffs argue that the requested discovery will "support their argument that the capacity, likelihood, or tendency to deceive or confuse the public or a significant portion of the targeted consumers is a common issue; that common issues predominate over individual issues, and that common proof is available." Id. at 22. Defendants disagree and argue that Plaintiffs' requests are overbroad, not relevant to the class certification issue, and the burden of collecting and producing them outweighs any relevance. Id. at 11.

The Court finds that Plaintiffs have made a prima facie showing that the Rule 23 class requirements are satisfied for purposes of obtaining the requested discovery and the Court finds that RFP Nos. 16 and 17 are relevant to Plaintiffs' CLRA and UCL claims. The Court must now decide if the requests are proportional to the needs of the case and consider Plaintiffs' "need, the time required, and the probability of discovery resolving any factual issue necessary for the determination" of whether a class action is maintainable. Coleman, 2013 WL 2896884, at *4 (citing Kamm, 509 F.2d at 210). The Court will consider each of the disputes identified by the parties.

    1.    <u>Documents in Storage</u>

Defendants have identified twenty-six boxes of hard copy documents that may contain documents responsive to RFP Nos. 16 and 17. Id. at 28. Defendants contend that reviewing the documents contained in the boxes will "impose[] a significant burden" as the documents in the boxes are not organized by state or topic and will have to be sorted for California consumers, scanned, and reviewed, which will cost approximately $4,000. Id. Despite this, Defendants are willing to review the twenty boxes that are located in a remote storage facility in Utah and

7

produce responsive documents with customer identifying information redacted. Id. Defendants are not, however, willing to review the remaining six boxes, which are located in a remote storage facility in Maine, because

> [i]n order to access the files in Maine, Synapse would need to send a Synapse employee to the storage facility in Maine, which is a sixteen-hour round trip drive from Synapse's headquarters in Stamford, Connecticut. It is my understanding that the storage facility will not ship the boxes to Synapse's headquarters.

ECF No. 59-1, Declaration of Jody Freire In Support of Joint Motion for Determination of Discovery Dispute ("Freire Decl.") at ¶ 3. Ms. Freire's declaration states that she does not believe that the six boxes can be shipped, but she provides no facts or evidence to support this "understanding" and she fails to address whether there are other ways to transport or review the documents. Id. Defendants also fail to cite any cases or authority supporting the proposition that a sixteen hour drive to retrieve the potentially responsive documents is overly burdensome. Mot. at 28. While the Court appreciates the inconvenience of a sixteen hour drive to comply with discovery requests, Defendants admit the boxes may contain responsive documents and the Court finds the request is proportional to the needs of the case given that the complaints and grievances are relevant to Plaintiffs' claims, Plaintiffs cannot access the information any other way, and the burden of a long drive does not outweigh the likely benefit. Fed. R. Civ. P. 26(b)(1). Accordingly, Plaintiffs' request to require Defendants to review all twenty six boxes and produce responsive documents is **GRANTED.**

    2.    <u>Complaints through June 30, 2018</u>

Plaintiffs request that Defendants be compelled to produce responsive correspondence through June 30, 2018. Mot. at 23. In support, Plaintiffs note that the "Class Period" has been defined as the period May 17, 2012 to the present. Id. at 12. Defendants' response states that they will produce customer complaints between May 12, 2012 and December 31, 2017. Id. at 28. Defendants explain their unwillingness to produce responsive documents dated between January 1, 2018 and June 30, 2018 by referencing the definition of the Class Period and arguing proportionality. Id. at 13-14, 17, 28. In the Supplemental Joint Statement, Defendants agree

to produce responsive documents through the present although they explicitly reserve their right to argue that the Class Period ends on an earlier date. Supp. Jt. Stmt. at 3.

Given Defendants' concession, Plaintiffs' motion to compel responses through June 30, 2018, is **GRANTED**.

### 3. Customer Complaints Received Through Intermediaries

With respect to correspondence between customers and the BBB and other intermediaries, and Defendants' responses to that correspondence, Defendants have

> agreed, and still agree[], to produce all non-privileged documents responsive to RFP Nos. 16 and 17 relating to complaints received through the Better Business Bureau or a state Attorney General, including any response by Synapse.

Supp. Jt. Stmt. at 2.[3] Accordingly, Plaintiffs' request to compel customer complaints through intermediaries is **DENIED AS MOOT**.

### 4. Audio Files

Plaintiffs' RFPs seek audio files from Defendants' IVR. Mot. at 8. The audio files contain telephone conversations between Defendants' representatives and consumers who call with concerns or complaints about renewal charges. Id. Plaintiffs request that Defendants produce a twenty day sample of the calls with California customers which they assert represents less than 1% of the days in the Class Period. Id. at 24. Plaintiffs note that the calls can be labeled as Confidential – For Counsel Only pursuant to the protective order and note that Defendants should not be able to avoid production based on the sheer volume of calls. Id. at 25.

Defendants contend that Plaintiffs' request for audio files is overbroad and disproportionate to the needs of the case. Id. at 27-28. Defendants offer to "seek to determine whether there are any audio files relating to these four new potential 'class representatives,'" and "produce recordings of any responsive calls it locates as relates to these four additional potential class representatives." Id. at 26-27. Defendants note that they have at least 1,051,000

---

[3] "There is still a dispute about whether Synapse may redact the customer's name, address, and other contact information." Supp. Jt. Stmt. at 2. The Court will address that in section A6 below.

1 "unique audio files where the customer expressed an interest in potentially cancelling a
2 subscription and was associated with a California billing zip code" and that each file would have
3 to be reviewed manually, requiring extraordinary effort. Id. at 27; see also ECF No. 59-2,
4 Declaration of Robert Vance in Support of Joint Motion for Determination of Discovery Dispute
5 ("Vance Decl.") at ¶ 2-3. The calls are an average of eight minutes long (8,408,000 minutes of
6 audio) and would take approximately 5,839 days to review. Id.

7 The Court agrees that reviewing all audio files at this time is not proportionate to the
8 needs of the case under Fed. R. Civ. P. 26(b)(1). However, Plaintiffs are no longer requesting
9 all audio files and Defendants do not address Plaintiffs' proposal for a twenty day sample of
10 audio recordings. Similarly, Plaintiffs do not address Defendants' proposal of producing audio
11 files relating to the class representatives. Also, it is unclear how Defendants are able to
12 determine if there are audio files for the four new potential class representatives if they have
13 "no method or means to search these audio files or otherwise determine whether they contain
14 discussions responsive to RFP Nos. 16 or 17." Id. at 27.

15 Plaintiffs' motion is **GRANTED IN PART**. The Court finds both suggestions to be
16 reasonable and proportional. Defendants are ordered to produce all audio files for the named
17 Plaintiffs, including the four individuals identified on July 25, 2018. Defendants also are ordered
18 to review all audio files for a fourteen day period and to produce to Plaintiffs all responsive audio
19 files with a California consumer. Plaintiffs may choose any fourteen day period during the Class
20 Period and must notify Defendants by **September 14, 2018**, of the chosen dates and
21 Defendants must search the identified fourteen-day period.

22     5. <u>ESI Search</u>

23 Plaintiffs seek to compel Defendants to produce all known responsive documents
24 regardless of whether they are a "hit" in an ESI search. Id. at 25, 26. Plaintiffs argue that this
25 was contemplated in the ESI Stipulation entered on April 25, 2018. Id. at 25. Plaintiffs note
26 that Defendants are likely to have responsive ESI in both emails and "internal documents
27 (particularly within its Customer Care team)" and that Defendants should be required "to
28 produce such documents that its Customer Care personnel are aware of, whether or not a

particular document is a "hit" in an ESI search."  Id. at 25-26.

Defendants state that they are "willing to produce relevant responsive emails through the process identified above and embodied in the Court-ordered ESI Stipulation. Any customer-identifying information will be redacted." Id. at 29. Defendants contend that producing all documents responsive to RFP No. 16 and 17 "obviates the need for the ESI protocol and would greatly increase [Defendants'] burden in responding." Id. Defendants contend that the request is not proportional to the needs of the case given that the ESI protocol is designed to identify responsive documents and that they should not have to "incur the additional expense of interviewing every Synapse employee to search for "known" documents that are not caught by the ESI protocol." Id.

On April 23, 2018, the parties submitted a Joint Statement Regarding ESI Stipulation which set forth their agreements and disagreements regarding the handling of ESI. ECF No. 46. One of the disputes focused on whether a responding party was required to produce ESI that it knew was responsive to a discovery request if the ESI was not identified in the required ESI search. Id. at 4, 13, 15-16. After considering the parties' arguments, the Court entered the ESI order including section 1.f. which states that

> ESI that is known to a Party to be responsive to a discovery request or relevant to the subject matter of this action may not be withheld on the grounds that it was not identified as responsive by the protocol described in, or developed in accordance with, this Order.

ECF No. 47 at 3.

In the ESI joint statement and again in the instant joint discovery motion, Defendants argue that the section 1.f. requirement is inappropriate and unduly burdensome because it requires Defendants to ask every employee about what he/she "knew" about Plaintiffs' discovery requests in order to determine if there is "known" ESI that was not identified by the agreed upon ESI protocol. ECF Nos. 46 at 13, 59 at 29. Defendants further argue that such a requirement obviates the purpose of an ESI protocol which is to streamline the discovery of ESI. Id.

11

The Court acknowledges that it initially ruled in favor of Plaintiffs on this issue when it included the section 1.f. language in the ESI Order, however, upon further consideration and in light of how Plaintiffs are seeking to apply the provision in the instant dispute, the Court reverses itself and finds that the term "known" is vague in this context and that it would be unduly burdensome to require Defendants to interview every employee to determine whether that employee knows of potentially responsive ESI that Defendants would then be required to produce. The parties have agreed upon search terms and custodians and Defendants are required to comply with those agreements and produce all non-privileged responsive documents that are identified by the protocol. Plaintiffs' request to compel production of all known responsive ESI regardless of whether it was a hit in an ESI search is **DENIED**.

The Court is concerned, however, by Defendants' failure to respond to Plaintiffs' concern that Defendants are not producing responsive corporate or internal documents, especially those within its Customer Care team. The parties have not provided the Court with specific details regarding this potential dispute (and it does not appear that the parties have adequately discussed the issue) so the Court is not issuing a ruling on it. If Plaintiffs believe that Defendants are inappropriately failing to produce responsive documents, such as those from the Customer Care team, Plaintiffs must meet and confer with Defendants in an effort to resolve the dispute and, if necessary, may file another motion to compel.

6. <u>Redaction of Consumer Identifying Information</u>

Defendants object to producing confidential information, such as credit card information, as well as all "information identifying any consumer" and seek to redact all such information. Mot. at 28-29. Defendants contend that Plaintiffs' need for the confidential information does not outweigh the customer's claimed privacy rights, but they do not provide any explanation for their request to redact identifying information. Defendants also do not address why the protective order entered in this case is insufficient to protect the customer's confidential identifying information.

Plaintiffs argue that "[t]here is no legitimate basis to redact" customer identifying information because RFPs 16 and 17 only seek complaints by California customers meaning that

any complainants are a part of the class. Id. at 23. Plaintiffs also argue that the complainants are potential witnesses whose identities Defendants should not be permitted to hide. Id.

The Court finds that the credit card numbers have minimal, if any, relevance to the litigation and a significant confidentiality concern so Defendants may redact all credit card numbers from compelled and voluntarily produced discovery. On the other hand, the Court finds that the requested California Consumer identifying information is relevant to the litigation and will be adequately protected by the Protective Order so that information may not be redacted in the compelled and produced discovery. See ECF Nos. 30-31; see also Miller v. Fuhu, Inc., 2015 WL 12914393, at *1 (C.D. Cal. Mar. 17, 2015) (finding that "the names and contact information of all purchasers of Nabi tablets [wa]s too broad of a request," but permitting plaintiff to learn "the names and contact information of customers who have complained about the power adapters or charging issues with the Nabi tablets [as they] may be relevant to Plaintiff's efforts to obtain class certification for the reasons supplied by Plaintiff—to demonstrate typicality and adequacy of the class representative) (citing Pioneer Elecs. (USA), Inc. v. Super. Ct., 40 Cal. 4th 360, 373 (2007) ("Contact information regarding the identity of potential class members is generally discoverable, so that the lead plaintiff may learn the names of other persons who might assist in prosecuting the case.")); and ShopKo Stores Operating Co., LLC v. Balboa Capital Corp., 2016 WL 9308530, at *1 (C.D. Cal. Oct. 19, 2016) (finding records showing that Defendant's other customers "were confused, misled or deceived by pro-rata rent lease terms comparable to those at issue in this lawsuit [we]re relevant to Plaintiff's fraud and UCL claims. Persisting in an allegedly deceptive business practice after receiving customer complaints could be evidence of intent to defraud" and ordering defendant to respond to an RFP seeking "documents and communications concerning other lawsuits, complaints, objections or grievances, whether formal or informal, from any past, present or prospective customer.").

**B.     Requests for Production Nos. 21-22**

Plaintiffs seek an order from the Court compelling Defendants to further respond to RFPs Nos. 21-22. Mot. at 33. RFP No. 21 seeks the following:

> All scripts utilized at any time during the Class Period by any telephone representative of Synapse that relate to answering questions from consumers regarding Automatic Renewal or Continuous Service subscriptions.

Mot. at 29. RFP No. 22 seeks:

> All documents that constitute, memorialize, or reflect Synapse's policies, procedures, and/or practices during the Class Period concerning the handling of telephone calls that included an inquiry regarding enrollment into or cancellation of an Automatic Renewal or Continuous Service subscription.

Mot. at 31. Defendants objected to RFP Nos. 21 and 22 but agreed in response to RFP No. 21 to

> produce copies of all of the scripts within Synapse's possession, custody, or control that Synapse can, after a reasonable search, determine were used by telephone representatives between May 17, 2012 and May 17, 2016.

Id. at 31. Defendants supplemented their response to RFP No. 22 by stating they would produce

> [a]ll training manuals within Synapse's possession, custody, or control used in training customer-service telephone representatives between May 17, 2012, and May 17, 2016; and [] [a]ll policies-and-procedures documents that were provided to telephone representatives between May 17, 2012, and May 17, 2016 concerning how telephone representatives handle telephone calls inquiring into enrollment into or cancelling Synapse automatic-renewal or continuous-service subscriptions.

Id. at 33.

In the motion, Plaintiffs asserted that Defendants' response to RFP Nos. 21 and 22 were inadequate because the appropriate end date is "the present" not May 17, 2016 as set by Defendants. Id. In the Supplemental Joint Statement, Defendants agree to produce responsive scripts and policies and procedure documents through the present but preserve their rights to argue that the Class Period ended on May 17, 2016. Supp. Jt. Stmt. at 3. Accordingly, Plaintiffs' motion is **GRANTED** as to the relevant time period and Defendants are ordered to provide responsive documents from May 17, 2012 to the present.

Plaintiffs argue that the response to RFP No. 22 is deficient because Defendants should

14

not limit their production to "policies-and-procedure documents that were provided to telephone representatives" as the request seeks the described documents regardless of whether the documents were given to telephone representatives. Id. at 33; Supp. Jt. Stmt. at 4. Plaintiffs argue that their request is directly relevant "to common proof on the issue of whether reasonable consumers were likely to be misled" and should be produced. Mot. at 34. Defendants respond that to the extent Plaintiffs' request seeks more than Defendants have agreed to produce, the request is not proportional under Rule 26. Id. at 35. Defendants also assert that they "cannot assume the burdensome task of producing "[a]ll documents" responsive to this request. Id.

Defendants do not provide a factual basis for their position that the request is unduly burdensome. For example, Defendants do not provide an estimate of how many documents regarding policies and procedures are at issue, state where they are stored, describe any ESI accessibility issues, or explain how much larger their burden will be if they are required to produce responsive documents beyond what was provided to telephone representatives. Id. Defendants do not provide any explanation or support for their apparent position that documents regarding relevant policies and procedures that were not provided to telephone representatives have minimal or no relevance to the instant litigation. Id. Finally, Defendants do not provide an adequate explanation for why they should not have to "assume the burden of searching for and producing all documents responsive to th[ese] request[s]." Id. at 34-35. When responding to a request for production of documents a party is to produce all relevant documents in his "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). "Accordingly, a party has an obligation to conduct a reasonable inquiry into the factual basis of his responses to discovery. Based on that inquiry, a party responding to a request for production 'is under an affirmative duty to seek that information reasonably available" to it and make an appropriate production of responsive documents.'" Hartline v. Nat'l Univ., 2018 WL 1014611, at *3 (E.D. Cal. Feb. 22, 2018) (citing National Ass'n of Radiation Survivors v. Turnage, 115 F.R.D. 543, 554– 56 (N.D. Cal. 1987) and quoting Gray v. Faulkner, 148 F.R.D. 220, 223 (N.D. Ind. 1992)). Defendants must make a reasonable effort to produce all responsive documents. See Kaur v. Alameida, 2007 WL 1449723, *2 (E.D. Cal. May 15, 2007) (ordering defendants to conduct additional

research for responsive documents and reminding defendants and counsel "of their duty under Rule 34 to conduct a diligent search and reasonable inquiry in effort to obtain responsive documents"); see also Lopez v. Florez, 2013 WL 1151948, * 2 (E.D. Cal. March 19, 2013) ("[a] responding party has an affirmative duty to reasonably seek information requested under Rule 34(a) from its agents or others under its control) (citing Hill v. Eddie Bauer, 242 F.R.D. 556, 560 (C.D. Cal. 2007)).

The Court finds RFP No. 22 seeks relevant information and that Defendants have not provided a factual or legal reason to limit the request to the terms they propose. Defendants also have not established that the request as written is not proportional to the needs of the case. Accordingly, Plaintiffs' motion is **GRANTED** and Defendants may not limit their response to documents provided to telephone operators.

**C.     Requests for Production Nos. 23-24**

Plaintiffs seek an order from the Court compelling Defendants to further respond to RFPs Nos. 23-24. Mot. at 38-39. RFP No. 23 seeks the following:

> Request for Production No. 23:
>
> Documents sufficient to identify the name, address, telephone number, and job title/position of each telephone representative who, during the Class Period, handled telephone calls from one or more California Customers concerning an Automatic Renewal or Continuous Service subscription.

Mot. at 35. Defendants initially objected to the RFP

> based on attorney-client privilege, the work product doctrine, confidentiality and privacy, proportionality regarding accessibility of certain ESI, proportionality regarding distribution channels, and the definitions of Document, Class Period and Synapse.

Id. at 36. Defendants further objected to the request as overbroad, unduly burdensome and disproportional to the needs of the case because it sought discovery about personal information of Defendants' employees. Id. Defendants supplemented their objection by noting that the discovery appeared to relate more to the Cruz matter than the instant matter. Id. at 36.

Plaintiffs argue that Defendants' response to RFP No. 23 is insufficient because the request is not limited to representatives employed by Defendants and that Defendants must respond with any information that they are able to obtain from its contractors as well. Id. at 38. Defendants contend that they "do[] not directly employ any such telephone representatives, and thus will not be providing the information requested in RFP 23." Id. at 39.

RFP No. 23 seeks information about the telephone representatives who handled calls from California customers. Id. at 35. The request is not limited to telephone representatives "directly employ[ed]" by Defendants. Id. at 39. Defendants are required to produce responsive documents that are in their "possession, custody, or control." Fed. R. Civ. P. 34(a)(1). This includes documents in the possession of third parties from whom Defendants have a right to obtain the documents or over whom Defendants have control. Soto, 162 F.R.D. at 619. If, for example, Defendants "indirectly" employ telephone representatives through contractors or by other means, Defendants are required to obtain the requested information from said contractors or other sources. Similarly, if Defendants have responsive documents identifying the described telephone representatives, they must produce the documents even if the representatives are employed by another entity. Defendants' narrow interpretation of RFP No. 23 is not reasonable in light of the text of the request. Accordingly, Plaintiffs' motion to compel further response to RFP No. 23 is **GRANTED**.

RFP No. 24 seeks:

> Documents sufficient to identify each entity that employed telephone representatives who, during the Class Period, handled telephone calls for Synapse regarding consumer complaints about Automatic Renewal or Continuous Service subscriptions.

Mot. at 37. In the August 22, 2018 Joint Statement, the parties informed the Court that

> Synapse agrees to identify each entity that employed telephone representatives who handled the telephone calls for Synapse at any time between May 17, 2012 and the present. With that information, there will be no further dispute regarding RFP No. 24.

17

ECF No. 79 at 4. Accordingly, Plaintiffs' motion to compel further response to RFP No. 24 is **DENIED AS MOOT**.

**D.  Cost Sharing**

Defendants request that to the extent the Court grants Plaintiffs' motion, Plaintiffs be ordered to bear the costs of the discovery they seek. Mot. at 11-12. Plaintiffs do not address this request. Mot.

The responding party generally bears the expense of complying with discovery requests. See United States ex rel Hooper v. Lockheed Martin Corp., 2009 WL 10655342, at *3 (C.D. Cal. Dec. 10, 2009) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 358 (1978) ("the presumption is that the responding party must bear the expense of complying with discovery requests")). However, the Court may "'specify the conditions for [] discovery[,]' which may include cost sharing." U.S. ex rel. Guardiola v. Renown Health, 2015 WL 5056726, at *2 (D. Nev. Aug. 25, 2015) (citing 2006 Advisory Committee Notes to FRCP 26(b)). Cost sharing may be appropriate when electronic documents are not reasonably accessible. See Connecticut Gen. Life Ins. Co. v. Earl Scheib, Inc., 2013 WL 485846, at *2–3 (S.D. Cal. Feb. 6, 2013). "When considering cost shifting, courts in this circuit rely on the seminal Zubulake factors." U.S. ex rel. Guardiola, 2015 WL 5056726, at *2 (citing Zubulake v. UBS Warburg LLC, 217 F.R.D. 309, 324 (S.D. N.Y. 2003) ("Zubulake I ") (identifying seven factors); Zubulake v. UBS Warburg LLC, 216 F.R.D. 280, 284 (S.D. N.Y. 2003) ("Zubulake II ") (applying those factors); and Tierno v. Rite Aid Corp., 2008 WL 3287035, at *4 (N.D. Cal. July 31, 2008) (characterizing the Zubulake factors as a "gold standard" in ESI discovery disputes)). Zubulake identified the following factors to be considered:

> 1. Extent to which the request is specifically tailored to discover relevant information; 2. Availability of such information from other sources; 3. Total cost of production, compared to the amount in controversy; 4. Total cost of production, compared to the resources available to each party; 5. Relative ability of each party to control costs and its incentive to do so; 6. Importance of the issues at stake in the litigation; and 7. Relative benefits to the parties of obtaining the information.

Couch v. Wan, 2011 WL 2551546, at *4 (E.D. Cal. June 24, 2011) (quoting Zubulake v. UBS

Warburg LLC, 216 F.R.D. at 284).

> Cost shifting should only be considered when discovery imposes an undue burden or expense that outweighs the likely benefit of the discovery. With discovery of electronic documents, whether production of such documents is unduly burdensome or expensive turns primarily on whether it is kept in an accessible or inaccessible format.

Id. (quoting Fed. R. Civ. P. 26(b)-(c) and Zubulake v. UBS Warburg LLC, et al., 217 F.R.D. at 318) (internal citations and quotations omitted). Accessibility turns largely on the expense of production.

Here, Defendants have not established a basis for cost sharing. As discussed above, Plaintiffs' requests seek relevant information and documents and Defendants have not established that responding to the requests is unduly burdensome or expensive. After considering the Zubulake factors, the Court **DENIES** Defendants' request to shift the discovery costs to Plaintiffs.

**E.     Unredacted Bank and Credit Card Statements**

Defendants seek an order from the Court compelling Plaintiffs to produce unredacted versions of their bank and credit card statements. Mot. at 40. Defendants state that Plaintiffs have produced heavily redacted statements that leave only the bank boilerplate language and the specific charges at issues unredacted. Id. Defendants argue that in addition to redacting information Plaintiffs deemed to be irrelevant, Plaintiffs admitted to redacting potentially relevant information if it was not responsive to Defendants' requests. Id. Defendants speculate that the relevant redacted information could include "Plaintiffs' purchases leading to the magazine offers at issue [and] other items which may auto-renew, and their business sophistication." Id. at 41. Defendants note that they do not object to the redaction of credit card and bank account numbers. Id. at n. 2.

Plaintiffs contend that the statements at issue were redacted "to omit details about the Plaintiffs' respective financial transactions unrelated to Synapse" and that there is no basis to compel further production. Id. at 41. Plaintiffs explain that redacted information has never

19

been the subject of a discovery request. Id. Plaintiffs note that the litigation itself does not waive their rights to privacy. Id. at 42.

The parties do not provide the exact language of the request(s) at issue, but Defendants argue that the redacted responses were to "requests for the statements reflecting the charges at issue in this case." Id. at 40 (emphasis added). While this wording indicates Defendants were seeking the entire statement, it also indicates that the only reason the statements were relevant was because they contain the charges at issue in this case. As such, Plaintiffs' decision to redact all charges other than the ones at issue was reasonable. The Court notes that Defendants do not dispute Plaintiffs' claim that the request(s) do not seek any information or charges other than the charges at issue. Assuming that is true, Defendants have no basis to object to Plaintiffs' failure to produce unrequested information. If Defendants believes additional charges are relevant, they should properly request them. Accordingly, Defendants' motion to compel Plaintiffs to produce unredacted versions of their bank and credit card statements is **DENIED**.

## **CONCLUSION**

Plaintiffs' motion to compel further response to RFP No. 16 and 17 is **GRANTED IN PART**. Plaintiffs' motion to compel further response to RFP No. 21, 22, and 23 is **GRANTED**. Plaintiffs' motion to compel further response to RFP No. 24 is **DENIED AS MOOT**. Defendants must provide supplemental responses on or before **September 28, 2018**.

Defendants' motion to compel unredacted bank and credit card statements is **DENIED**.

**IT IS SO ORDERED**.

Dated: 9/12/2018

Hon. Barbara L. Major
United States Magistrate Judge